## UNITED STATES v. CHUNG SHEE.

(Circuit Court of Appeals, Ninth Circuit. October 12. 1896.)

### No. 291.

1. CHINESE IMMIGRATION—COLLECTOR'S DECISION—HABEAS CORPUS DECISION.
   In habeas corpus proceedings to release a Chinese person who is denied admission to the United States by a collector, the court is not limited merely to the question of the jurisdiction of the collector to make the decision complained of, but may re-examine all the facts and circumstances which came before the collector.

2. SAME—RES JUDICATA.
   A judgment of a federal court discharging on habeas corpus a Chinese immigrant detained on board a vessel pursuant to a collector's decision, and permitting her to land, is conclusive of the right of entry, and that right cannot be re-examined by any subsequent proceedings for deportation. 71 Fed. 277, affirmed.

In Error to the District Court of the United States for the Southern District of California.

This was an appeal by Chung Shee, a Chinese woman, from an order of deportation made by a United States commissioner. The district court reversed the order of the commissioner, and discharged

the prisoner (71 Fed. 277), and the United States have sued out this writ of error.

George J. Denis and Frank G. Finlayson, for plaintiffs in error.
George P. Phibbs, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. In June, 1893, the defendant in error, a Chinese woman, arrived at the port of San Francisco, by steamer, from China, and, under the name of Chung Shee, sought admission to the United States on the ground that she was the wife of a Chinese merchant then living in San Francisco. She was examined by the collector of that port, and was refused permission to land. On July 21, 1893, a writ of habeas corpus was issued in her behalf from the district court of the Northern district of California; and, upon the hearing had thereon concerning the right of the said Chung Shee to land, it was the decision of the court that she was not the wife of the said merchant, and an order was made directing her deportation to China. Accordingly, on August 10, 1893, she was placed on board a steamship bound for the port of Hong Kong. In the following January she arrived at the port of Portland, in Oregon, by the steamer Signal, from the port of Victoria, in British Columbia, and, under the name of Lum Lin Ying, sought admission at said port upon the ground that she was the wife of a Chinese merchant of the city of Portland named Chung Chew. She was examined by the collector of the port of Portland, and was by him denied permission to land. On January 30, 1894, her petition was presented before the judge of the district court of the United States for Oregon for a writ of habeas corpus, setting forth that she was unlawfully detained in custody on board the steamship Signal by the master thereof, in accordance with the decision of said collector, and alleging that she was the wife of one Chung Chew, a Chinese merchant doing business in said city of Portland. A writ was issued on the said petition, and on February 2, 1894, said writ and return were heard upon the single issue of the alleged marriage of the petitioner to the Portland merchant, Chung Chew. The court found that she was not the lawful wife of said Chung Chew, inasmuch as there had been no marriage ceremony, but she was ordered to be discharged from custody, and to be permitted to enter the United States, upon the ground that she had come to this country with the bona fide belief that the betrothal had between her and Chung Chew amounted to a marriage ceremony, and that she was his lawfully wedded wife. Thereafter the said Chung Chew and the defendant in error removed to Los Angeles, Cal., where the latter has since resided. On July 31, 1895, a complaint was filed with a United States commissioner at Los Angeles, alleging that the defendant in error was at the date of filing said complaint unlawfully within the United States, and that from the time of her coming to the United States to the present time she had been and was a Chinese laborer. Upon the hearing on said complaint, the commissioner made findings and entered judgment finding

that the defendant in error was a Chinese laborer, unlawfully within the United States, and adjudging that she be removed to China. An appeal was taken from said findings and judgment to the district court of the United States for the Southern district of California. Thereafter, on December 2, 1895, the judge of said court filed with the clerk thereof his written opinion, and ordered that the judgment and order of said commissioner be reversed and that the defendant be discharged; holding that the judgment and order of the district court for the district of Oregon, whereby it had been adjudged that the defendant in error should be discharged from the custody in which she was then held, was res adjudicata, and was a final determination of her right to enter the United States, and could not be collaterally assailed in the present proceeding, and must be held to establish the lawfulness of her residence here. 71 Fed. 277. It is the object of the present writ of error to review the said decision of the district court of the Southern district of California, and the sole question presented for our consideration is whether or not the prior judgment of the district court of Oregon is such a determination of the right of the defendant in error to be and remain within the United States as to preclude inquiry into the facts presented on the complaint.

It is contended on the part of the plaintiff in error that the jurisdiction of the judge of the district court of Oregon in the habeas corpus proceedings before him was limited to an inquiry concerning the jurisdiction of the collector of the port of Portland to decide against the right of the defendant in error to land at that port; in other words, that the Oregon court was empowered to consider but two questions—First, whether there was any legal and competent evidence before the collector of that port from which the ultimate facts that sustained his judgment could be deduced; and, second, were those ultimate facts, as found by him, sufficient in law to justify his judgment? To support this contention, reference is made to the construction placed by the courts upon similar provisions in the acts of congress for the regulation of immigration. Section 2 of the act of August 3, 1882 (22 Stat. 214), provides that the commissioners of immigration "shall examine into the condition of passengers arriving in any ship or vessel, and for that purpose they are authorized to go on board and through any such ship or vessel; and if on such examination there shall be found among such passengers any convict, lunatic, idiot, or any person unable to take care of himself or herself without becoming a public charge, they shall report the same in writing to the collector of such port, and such person shall not be permitted to land." Section 6 of the act of February 23, 1887 (24 Stat. 415), provides that it shall be the duty of the commissioners, etc., "to examine into the condition of passengers arriving at the ports * * * and if in such examination there shall be found among such passengers any person included in the prohibition in this act they shall report the same in writing to the collector of such port and such persons shall not be permitted to land." In a series of decisions construing the provisions of the immigration acts above quoted, the courts have held the boards of commissioners to be tri-

bunals of a quasi judicial character, constituted by law for the pur-' pose of inquiring into the facts relative to the immigrants' right to land in the United States. In Re Day, 27 Fed. 678, certain immigrants had been denied the right to land after an examination by the' commissioners, and had applied for a writ of habeas corpus to review the commissioners' findings, and to reverse their decision. The' court said:

"It is the business of the commissioners, and not of this court, to ascertain the facts, and to determine whether or not any particular passenger comes with: in the provisions of the statute, so as not to be entitled to land. [Quoting section 2 of the act.] The provisions above quoted manifestly impose upon the commissioners the duty of determining the facts upon which the refusal of the right to land depends. The general doctrine of the law in such cases is that, where the determination of the facts is lodged in a particular officer or tribunal, the decision of that officer or tribunal is conclusive, and cannot be reviewed, except as authorized by law. [Quoting numerous decisions.] The statute of 1882 makes no provision for any review of the decision of the commissioners upon the evidence before them. No such review can therefore be had upon a writ of habeas corpus."

Of similar import are the decisions in Re Cummings, 32 Fed. 75; Re Dietze, 40 Fed. 324; Re Vito Rullo, 43 Fed. 62; Re Bucciarello, 45 Fed. 463. These decisions follow and apply the general principle established by the supreme court—

"That, when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal within the scope of its authority is conclusive upon all others." Johnson v. Towsley, 13 Wall. 72, 83; French v. Fyan, 93 U. S. 169; Steel v. Refining Co., 106 U. S. 447, 1 Sup. Ct. 389; Baldwin v. Stark, 107 U. S. 463, 2 Sup. Ct. 473.

The grant of power to the collector of the port under the Chinese restriction act of May 6, 1882, is found in section 9, in these' words:

"That before any Chinese passengers are landed from any such vessel, the collector, or his deputy, shall proceed to examine such passengers, comparing the certificates with the list and with the passengers; and no passenger shall be allowed to land in the United States from such vessel in violation of law."

It is urged that the duties imposed upon the collector in the Chinese exclusion act are similar to, and equally extensive with, those imposed upon the commissioners in the immigration acts, and that all the reasons which may be urged in support of the finality of the decisions of the commissioners apply equally to those of the collector. The supreme court has, however, in our judgment, placed an interpretation upon the powers conferred upon the collector which must control the decision of this case. In the case of Jung Ah Lung, 124 U. S. 621, 8 Sup. Ct. 663, an appeal had been taken from the judgment of the circuit court of the United States for the district of California affirming the judgment of the district court of that district (25 Fed. 141) in a case of habeas corpus arising on a petition, presented to the district court, alleging that Jung Ah Lung, a subject of the emperor of China, was unlawfully restrained of his liberty under the order of the collector of the port of San Francisco. The collector had denied the right of the petitioner to land, for the reason that he had failed to produce to the collector

the certificate of identification provided for by law.　It was urged in the courts below and in the supreme court that the collector of the port had passed judgment on matters of law and fact involved, and that the same were res adjudicata.　The supreme court, in interpreting section 9, alluded to the provisions of section 12 of the same act, and said that:

"The implication of section 12 is strongly in favor of the view that the jurisdiction of the courts of the United States in the premises was not intended to be interfered with.　That section provides that 'any Chinese person found unlawfully within the United States shall be caused to be removed therefrom to the country from whence he came * * * after being brought before some justice, judge, or commissioner of a court of the United States and found to be one not lawfully entitled to be or remain in the United States.'　So that, if it were to be claimed by the United States that Jung Ah Lung, if at any time he should be found here, was found unlawfully here, he could not be removed to the country from whence he came, unless he were brought before some justice, judge, or commissioner of a court of the United States, and were judicially found to be a person not lawfully entitled to be or remain here.　This being so, the question of his title to be here can certainly be adjudicated by the proper court of the United States, upon the question of his being allowed to land."

It is urged by the plaintiffs in error that the decision in the Jung Ah Lung Case is not inconsistent with their contention in the present case, and that the supreme court in that case did not have under consideration the effect of the judgment of the court in the habeas corpus proceedings, nor the limits of the power which might be exercised on habeas corpus, but that the question there was only whether or not the decision of the collector could be reviewed at all on habeas corpus, and that the language of the court, in holding that the "title to be here can certainly be adjudicated by the proper court of the United States upon the question of his being allowed to land," relates, not to the provision of the law conferring power upon the collector in the matter of preventing Chinamen from landing in violation of law, but to the provisions of section 12, and the proceeding before a court or commissioner on a complaint to remove to the country whence he came any Chinese person found unlawfully within the United States.　We do not so understand the decision.　It is true that the main question presented before the court was whether or not there was jurisdiction to issue a writ of habeas corpus, and that the court pointed to section 12 as sustaining the view that the jurisdiction of the courts in the premises was not intended to be interfered with, and drew the conclusion that from that section it followed that the question of the title of a Chinese immigrant to be here can be adjudicated by the proper court in the first instance, when the question arose of his right to land; but it also distinctly appears that the court proceeded further to declare that it regarded section 9 "as only a provision for specifying the executive officer who is to perform the duties prescribed," and that "no inference can be drawn from that or any other language in the acts that any judicial cognizance which would otherwise exist was intended to be interfered with."　In other words, the decision expressly holds that, notwithstanding the provisions of section 9, the courts still have the same jurisdiction, upon habeas corpus, to inquire into the legality of the col-

lector's restraint of Chinese, and the facts concerning the same, that they would have, had the act contained no such provision. It follows from this view of the effect of the Jung Ah Lung Case that the decision of the district court for the district of Oregon upon the writ of habeas corpus was an adjudication of the title of the defendant in error to be and remain in the United States, upon the facts which were involved upon the hearing of the writ. It is not claimed that she is amenable to deportation by reason of any fact arising since the date of that adjudication. The questions which were then determined were those which were raised by the petition and the return. In the petition was alleged the petitioner's claim of right to land, and the denial of that right, and her restraint. The judgment shows that upon hearing had she was "discharged from the detention and restraint complained of in said petition." It clearly appears that there were re-examined before the court all the facts and circumstances which came before the collector on his original examination. She cannot again be lawfully arrested and held upon the same facts that were in issue in the former proceeding. 1 Freem. Judgm. § 324; Ex parte Jilz, 64 Mo. 205; Yates' Case, 6 Johns. 337; In re Crow, 60 Wis. 349, 19 N. W. 713. In the present proceedings, it is true, it is alleged that the adjudication of the court in Oregon was obtained by the introduction of false testimony, and is tainted with fraud. But such fraud is not a ground upon which to collaterally attack the judgment. U. S. v. Throckmorton, 98 U. S. 61. We find no error in the decision of the district court, and the same will be affirmed.