---

*In re* RAY.

1. HABEAS CORPUS—RES JUDICATA—DISCHARGE ON DEFECTIVE PROCEEDINGS NO BAR ON PERFECTED PROCEEDINGS—RENDITION PROCEEDINGS.

On certiorari to review an order dismissing a writ of *habeas corpus*, plaintiff's discharge from custody in former *habeas corpus* proceedings because the circuit judge found that the proceedings under 3 Comp. Laws 1915, § 15887 *et seq.*, under which plaintiff, a fugitive from justice, was detained, were defective, *held*, not *res judicata*,

where plaintiff was subsequently indicted, and is detained by the sheriff on a writ of rendition issued by the governor of this State, although the same crime was charged in the former proceedings by affidavit as is here charged by indictment.

2. SAME.

The release of a person on the ground of informality or mistakes in the proceedings should not be a bar to an arrest on perfected papers or regular proceedings.

3. CONSTITUTIONAL LAW—REQUISITION FOR RETURN OF FUGITIVE—GOVERNOR CONTROLLED BY HIS OATH AND NOT BY COURTS.

Upon the requisition of the governor of another State for the return of a fugitive from justice, the governor of the State, in according or refusing rendition, interprets his constitutional oath, and his action cannot be controlled by the courts.

4. HABEAS CORPUS AVAILABLE IN CASE OF DEFECTIVE PROCEEDINGS—RENDITION PROCEEDINGS.

If his warrant of rendition is defective in itself, or was issued without compliance with the requirements of the Federal statute, the courts are open to the prisoner and *habeas corpus* may be resorted to for the purpose of securing his discharge.

5. SAME—RENDITION PROCEEDINGS—COURT WITHOUT AUTHORITY TO INTERFERE WHERE PROCEEDINGS REGULAR.

The claim of plaintiff, who is under indictment for murder in another State, that the killing was done in self-defense, and that by reason of the fact that he is a negro, and because of numerous lynchings in said State, he would not be accorded a fair trial there, *held*, insufficient ground for the courts to interfere, on *habeas corpus* proceedings, with the warrant of rendition issued by the governor of this State on the requisition of the governor of said other State for plaintiff's return; there being no claim of any irregularity in the proceedings.

Certiorari to Wayne; Goff (John H.), J. Submitted June 24, 1921. (Docket No. 96.) Decided July 19, 1921.

*Habeas corpus* proceedings by Thomas Ray to obtain his release from custody of the sheriff of Wayne county. From an order dismissing the writ, plaintiff brings certiorari. Affirmed.

*Willis & Hinton,* for appellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, for the people.

*Allan P. Cox* and *John A. Hamilton,* for the State of Georgia.

FELLOWS, J. Certiorari to review *habeas corpus* proceedings. The plaintiff, Thomas Ray, was indicted by the grand jury of Wilkinson county, Georgia, for the murder of one Dewitt Faulkner. The return of the sheriff of Wayne county to this writ shows him to be detained on a warrant of rendition issued by the governor of this State on November 4, 1920, upon the requisition of the governor of Georgia. There is no claim of any irregularity in the rendition proceedings and it is not claimed that plaintiff is not a fugitive from justice. Upon the argument in this court it was admitted that plaintiff killed Faulkner at the time and place charged but it was insisted that the killing was in self-defense.

Two grounds are urged to sustain the writ. We will consider them in the order presented by plaintiff's counsel. The first of these is that plaintiff was discharged by Judge Hunt in former *habeas corpus* proceedings, and that such proceedings are *res adjudicata.* From the record and the argument in this court it appears that the facts with reference to the case before Judge Hunt were these: Before the grand jury of Wilkinson county, Georgia, returned its indictment the sheriff of that county learned that Ray was in Detroit and came there and instituted proceed-

ings under 3 Comp. Laws 1915, § 15887 *et seq.* As we understand it, the same crime as here charged in the indictment was there charged in an affidavit. It does not appear whether a warrant of rendition was issued by the governor in that proceeding. Application was made to Judge Hunt for a writ of *habeas corpus,* and upon the hearing plaintiff was discharged, Judge Hunt holding that the proceedings were defective. About this time the grand jury of Wilkinson county, Georgia, returned the indictment and the sheriff of that county so notified the Detroit officers. Plaintiff was again arrested; the governor of Georgia requested the rendition of Ray by this State, basing his requisition on the indictment. A hearing was had before the governor, and his warrant of rendition of November 4, 1920, was issued. Plaintiff's counsel contend that, inasmuch as the same crime was charged in the affidavit as is now charged in the indictment, the decision of Judge Hunt discharging plaintiff is *res adjudicata.* We cannot agree with this contention. Plaintiff was not put in jeopardy in the first proceedings and they were dismissed as defective. Ruling Case Law thus announces the rule (11 R. C. L. p. 751):

"The release of a person on the ground of informality or mistakes in the proceedings should not be a bar to an arrest on perfected papers or regular proceedings. * * * A second indictment for the same offense may serve as the basis for the second extradition of a person as a fugitive from justice without violating any rights secured to him by the Federal Constitution or laws, where the first indictment, on which the accused was originally extradited, was dismissed on motion of the State's attorney before the accused was placed in jeopardy."

This text finds support in the following cases: *Kurtz* v. *State,* 22 Fla. 36 (1 Am. St. Rep. 173) ; *Bassing* v. *Cady,* 208 U. S. 386 (28 Sup. Ct. 392; 13 Ann. Cas.

905) ; *In re White,* 45 Fed. 237.    We are not cited to any authority to the contrary where the detention was by virtue of a warrant of rendition.

The other ground urged as a basis for the discharge of plaintiff upon this writ is that he is a negro and cannot obtain a fair trial in Georgia, that there have been numerous lynchings in Georgia and other southern States, and that there is much of mob violence there.    Upon the argument considerable was said on the subject of "good faith."    We think it due to the State of Georgia and its officials to state that the record discloses no testimony which can be said to question the good faith of the governor of that State in making the demand on the governor of this State for the return of plaintiff or the good faith of the sheriff or other officers of Wilkinson county, Georgia, in prosecuting plaintiff for the murder of Faulkner. The governor of Georgia was highly spoken of by plaintiff's witness White, secretary of the National Association for the Advancement of Colored People, and no attack has been made on the integrity of the sheriff or other officials of Wilkinson county.    Sifted to its final analysis the contention of plaintiff is that he being a colored man would not be accorded a fair trial in the State of Georgia and he fears he will be lynched if taken back, and statistics gathered by interested parties showing the number of lynchings which have taken place in Georgia and other southern States were introduced and witnesses were permitted to express their opinion as to the probability of a fair trial of plaintiff if he was returned.    Indeed, plaintiff's counsel were given a free hand in making their record, and much of hearsay and other incompetent testimony is before us.    It may be said in passing that we are persuaded that plaintiff's fear of lynching is not based on substantial grounds. While lynchings in Georgia are more frequent than

in this State, the statistics put in evidence show them to have occurred here. This is to the regret of all law-abiding citizens of this State and we may indulge the belief that their occurrence causes regret by the law-abiding citizens of our sister States. They are occasioned by atrocious crimes, executed in the heat of passion before the cooling off period has run as it has in the instant case by the delay resulting from these proceedings.

Upon the argument a most powerful appeal was made by plaintiff's counsel to our sympathies. But a human life was taken in Wilkinson county, Georgia; that life was taken by plaintiff. Under the system of laws obtaining in this country a jury of the vicinage or of some other county of Georgia to which the case may be removed upon application for change of venue is the only body to determine whether that life was taken in self-defense. Unless plaintiff is tried in Georgia for the murder of Faulkner he cannot be tried at all.

We are to determine the legal question upon this record and no others. Had the demanding State the legal right to the return of plaintiff? The governor of the State in according or refusing rendition interprets his duty under his constitutional oath and his action cannot be controlled by this court. *Commonwealth* v. *Dennison*, 24 How. (U. S.) 66; *Germaine* v. *Governor*, 176 Mich. 585 (46 L. R. A. [N. S.] 857, Ann. Cas. 1915B, 418). If his warrant of rendition is defective in itself or was issued without compliance with the requirements of the Federal statute, the courts are open to the prisoner and *habeas corpus* may be resorted to for the purpose of securing his discharge. Possibly the question of whether the prisoner is a fugitive from justice may be inquired into on such application but as that question is not before us, we

express no opinion. Manifestly the field of inquiry into which the courts may enter is very much circumscribed.

Section 2 of article 4 of the Constitution of the United States provides:

"A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime."

This provision of the Constitution but carried out the former practice of the Colonies and the Confederation. *Commonwealth* v. *Dennison, supra.* For the purpose of carrying out this provision of the Constitution, congress passed the act of February 12, 1793 (U. S. Rev. Stat. 1878, § 5278). It is said that this act was brought about by a disagreement between the governors of Virginia and Pennsylvania over the rendition of one charged with crime. Scott on Interstate Rendition, § 4 *et seq.* The act of February 12, 1793, has remained substantially as enacted to the present time although some attempts have been made to change it. Numerous decisions have been handed down dealing with the power of the courts on *habeas corpus* and defining the questions which are open to the courts on *habeas corpus* where the detention is by virtue of a rendition warrant. Counsel for plaintiff have cited us to no decision of a court of last resort, and we have found none, which holds that the questions here sought to be raised are available on *habeas corpus.* The case of *Marbles* v. *Creecy*, 215 U. S. 63 (30 Sup. Ct. 32), relied upon by counsel, does not so hold. Speaking through Mr. Justice Harlan, it was there said:

"It is clear that the executive authority of a State in which an alleged fugitive may be found, and for

whose arrest a demand is made in conformity with the Constitution and laws of the United States, need not be controlled in the discharge of his duty by considerations of race, or color, nor by a mere suggestion—certainly not one unsupported by proof, as was the case here—that the alleged fugitive will not be fairly and justly dealt with in the State to which it is sought to remove him nor be adequately protected, while in the custody of such State, against the action of lawless and bad men.    The court that heard the application for discharge on writ of *habeas corpus* was entitled to assume, as no doubt the governor of Missouri assumed, that the State demanding the arrest and delivery of the accused had no other object in view than to enforce its laws, and that it would, by its constituted tribunals, officers and representatives, see to it not only that he was legally tried, without any reference to his race, but would be adequately protected while in the State's custody against the illegal action of those who might interfere to prevent the regular and orderly administration of justice."

The decision in the other case relied upon by counsel on this point, *In re A. H. Hampton*, 2 Ohio Dec. 579, is that of a *nisi prius* judge who after holding invalid the proceedings under which the petitioner was held used the language relied upon by counsel.    The decision was that of a *nisi prius* judge and the language indulged in was *obiter dictum* pure and simple.

In the case of *Drew* v. *Thaw*, 235 U. S. 432 (35 Sup. Ct. 137), Mr. Justice Holmes, who wrote for the court, concluded his opinion with the following clear statement:

"When, as here, the identity of the person, the fact that he is a fugitive from justice, the demand in due form, the indictment by a grand jury for what it and the governor of New York allege to be a crime in that State and the reasonable possibility that it may be such, all appear, the constitutionally required surrender is not to be interfered with by the summary process of *habeas corpus* upon speculations as to what

ought to be the result of a trial in the place where the Constitution provides for its taking place. We regard it as too clear for lengthy discussion that Thaw should be delivered up at once."

The language of the governor of New Hampshire in granting the requisition of the governor of New York for the rendition of Thaw will be found at page 317 of Scott on Interstate Rendition, and is worthy of perusal. In *Appleyard* v. *Massachusetts*, 203 U. S. 222 (27 Sup. Ct. 122; 7 Ann. Cas. 1073), it was said by the Supreme Court of the United States:

"A person charged by indictment or by affidavit before a magistrate with the commission within a State of a crime covered by its laws, and who, after the date of the commission of such crime leaves the State—no matter for what purpose or with what motive, nor under what belief—becomes, from the time of such leaving, and within the meaning of the Constitution and laws of the United States, a fugitive from justice, and if found in another State must be delivered up by the governor of such State to the State whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the governor of the State from which the accused departed. Such is the command of the Supreme law of the land, which may not be disregarded by any State. The constitutional provision relating to fugitives from justice, as the history of its adoption will show, is in the nature of a treaty stipulation entered into for the purpose of securing a prompt and efficient administration of the criminal laws of the several States—an object of the first concern to the people of the entire country, and which each State is bound, in fidelity to the Constitution, to recognize. A faithful, vigorous enforcement of that stipulation is vital to the harmony and welfare of the States. And while a State should take care within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to

enable offenders against the laws of a State to find a permanent asylum in the territory of another State."

In *Commonwealth* v. *Supt. Co. Prison,* 220 Pa. 401 (69 Atl. 916, 21 L. R. A. [N. S.] 939), the court, after a review of the authorities, said:

"If the jurisdictional facts authorizing the extradition of the accused appear from the papers, the court on a hearing in *habeas corpus* proceedings will not go into the merits of the case, or determine the guilt or innocence of the accused. It is the duty of the asylum State to protect the liberty of its citizens and not permit interstate extradition proceedings to be made a pretext for removing them to another jurisdiction for a purpose other than that within the intendment of the Federal Constitution. On the other hand, it is equally the duty of the State to aid in the punishment of crime committed in another State, by the prompt extradition of the guilty person found within its jurisdiction as a fugitive from justice. No State can be the asylum of a fugitive from justice, and hence it should promptly honor the requisition of a sister State for the extradition of a prisoner legally accused of committing an offense against the laws of that State. If the court on *habeas corpus* inquires into the merits of the charge against the prisoner or into the motives which inspired the prosecution in the demanding State, it exceeds its authority under the constitutional and statutory provisions regulating the extradition of criminals. The mandate of the constitution requires 'a person charged in any State with a crime' to be delivered by the asylum State to the State whose laws he has violated. That State alone can determine the guilt or innocence of the offending party. The theory and the intention of the constitutional and statutory provisions are that the offender shall be compelled to submit himself for trial to the courts of the State in which the offense was committed, and hence it would be usurpation of authority for the courts of another State to undertake to determine the question of his guilt in a *habeas corpus* proceeding. Assuming that the demanding State has complied with the requirements of the Fed-

eral Constitution and the act of congress in making the requisition for the accused, it would be equally an unconstitutional exercise of power for the court of the asylum State to inquire into the motives of prosecution, instituted in conformity with the laws of the demanding State, and release the offender and thereby prevent his extradition for trial in the latter State."

These authorities and many others which might be cited demonstrate that the rendition warrant of the governor cannot be nullified by the courts on *habeas corpus* proceedings by sustaining such claims as are here made. The Federal Constitution as interpreted by the courts precludes such a result. There was much foresight in adopting this clause of the Constitution, and there has been much wisdom in its proper interpretation. If we should accept the theory of plaintiff's counsel this State would soon become the asylum of the murderers and criminal classes of the southern States who could with safety here find immunity from rendition, immunity from prosecution for their crimes. Such a result our forefathers wisely prevented.

The judgment is affirmed.

STEERE, C. J., and MOORE, WIEST, STONE, BIRD, and SHARPE, JJ., concurred. CLARK, J., did not sit.