EX PARTE RALPH MESSINA, PETITIONER, v. L. H. MALTBIE, RESPONDENT.—128 S. W. (2d) 1082.

Kansas City Court of Appeals.    May 29, 1939.

*John S. (Jack) Cannon, Richard S. Musser* and *Charles Benanti* for petitioner.

*Harold Zelinkoff* and *Russell T. Boyle,* Assistant Prosecuting Attorney for respondent.

SHAIN, P. J.—On May 11, 1939, the applicant filed in this court for a writ of *habeas corpus* wherein it was alleged he was being unlawfully restrained of his liberty by William P. Boyle, Director of Police in and for Kansas City, Jackson County, Missouri, and other officers named. And also naming L. H. Maltbie, Agent for the State of Kansas.

Temporary writ was granted and petitioner brought before this court and by agreement of all parties hearing was set for Thursday,

May 25, 1939. Pending date of hearing, petitioner was released on bail duly furnished in the sum of $3000.

All parties respondent filed return to writ on May 19, 1939. The return of the agent of the State of Kansas is as follows:

"Comes now L. R. Maltbie for his return to said Writ states that on the 8th day of May, 1939, an executive warrant was issued by the Honorable Lloyd C. Stark, Governor of the State of Missouri, for the arrest of the said Ralph Messina at the request of the State of Kansas on the 9th day of May, 1939, the said Ralph Messina voluntarily surrendered himself into the custody of the Kansas City, Missouri Police Department and that thereupon a writ of *habeas corpus* issued by the Honorable Brown Harris, a judge of the Circuit Court of Jackson County, Missouri, was served on the Kansas City, Missouri Police Department; that thereupon the said police department produced the body of the said Ralph Messina before the court to be dealt with according to law and made the following return to said writ of *habeas corpus*, to-wit:"

The return of other respondents conform to the above return.

Applicant joined issue on two grounds: First, applicant alleged that at the time of the alleged offense in the State of Kansas he was not in the State of Kansas and therefore cannot be a fugitive from Justice; Second, applicant pleads *res adjudicata* and alleges that over eight years ago, to-wit on May 12, 1931, he was arrested under a fugitive warrant issued in the extradition proceedings by the Governor of the State of Missouri, wherein the exact charge as is charged herein was made and where the same issues as are now presented was therein in issue. Applicant further alleges that at said time when so charged he made application to Division No. 3 of the Circuit Court of Jackson County, Missouri, and was granted a preliminary writ of *habeas corpus* and that said cause was set for hearing on May 27, 1931, and that issues the same as now presented were joined and that the cause was then duly taken up by the said court, and that by the judgment, orders and decrees of said court, he was fully discharged and the matter of the charge of him being a fugitive from justice as to the charge as now made was fully adjudicated and the judgment and decrees there entered and made are *res adjudicata* and a bar to the present proceeding.

In the hearing had by us, evidence on part of applicant and respondent was submitted. There was evidence on part of applicant to the effect that at the time of the commission of the offense in Kansas, to-wit, arson, he was in the State of Missouri. The evidence was to the effect that he was a pall bearer at the funeral of a deceased friend and was present at the wake at the alleged time. There was, however, strong and cogent testimony to the effect that applicant was at the said time in the State of Kansas and at the very scene of the explosion and fire.

A witness who saw the flash and heard the explosion saw applicant flee from the scene and attempted to apprehend applicant and another as they fled, but that applicant and companion made their escape. Identification of applicant was made by this witness. His presence was further shown by an overcoat that was left at the scene. The applicant's last name was inscribed on the coat and the coat was traced by trade marks thereon and purchaser of same was shown to be applicant.

If passing alone upon the testimony offered in this case, we would certainly be impelled to the conclusion that the State of Kansas had met every burden and it would be our duty if deciding on the testimony, as indicated above and without consideration of the other defense made by applicant's reply, to decide this matter adverse to the applicant and permit him to be returned to Kansas for trial.

As to the applicant's plea of *res adjudicata*, a very grave question arises. It is the policy of our law that when an issue is once adjudicated that the matters of the issue involved become fixed and binding on all concerned as parties to the matter being litigated. Principles of public policy demand that it be thus, for otherwise human affairs would be in such an unsettled state as to defeat organized society. However, the frailties of human activity has its application even to the matters of the recorded judgment of courts of general jurisdiction, and wise safeguards against mistakes in matters of recorded judgments are provided. It is the duty of the court to keep notes of its proceedings and if after a judgment has been duly recorded there arises a question as to whether or not the record recites the true procedure and finding, any party feeling aggrieved at the error, if so, may file a motion in the court wherein the judgment was rendered asking for a correction. If upon the hearing of such motion there be such existing notes of the proceeding as show error in the recorded record, then and in that event the said court may correct the judgment so as to conform to the facts by what is termed a *nunc pro tunc* entry. As to the making of such an entry, it appears that neither estoppel nor limitation of time effects the right.

To further protect against errors in judgments, there is recognized a writ in the nature of the old common law writ of *coram nobis*. By this recognized procedure, if there be presented to the court that had rendered the judgment the facts that were not within the knowledge of the court and litigants at the time of rendition of the judgment which if known would have caused the court to have pronounced a different judgment, then the erroneous judgment may be set aside and a new judgment in conformity with the revealed facts may be entered.

Experience has taught us that in the certainty of the law lies the protection of the law. It follows that when a matter of dispute be determined by trial and judgment of court, all matters known as

going to the determination of the controversy must be determined by the judgment. Otherwise we would be harassed by multiplicity of suits over the same subject-matter.

With the above fundamental principles considered, one needs but to exercise his powers of thought to understand that a solemn judgment of record must be given verity and stand unless the same has been changed by due process of law that affords protection to all concerned. Such due process of law is amply provided in the procedure pointed out above and if not followed all judicial procedure becomes mockery, and protection of life, liberty and the pursuit of happiness becomes abolished.

In this proceeding we are operating under a writ of right, the struggle for which finds first expression in ancient history and its fruition is written in the blood of patriots.

One of the matters of grave importance to the theoretical sovereignty of the citizens of this republic is an inclination to break down the safeguards to our sovereign rights in order to affect some present good and laudable purpose. The protection of each individual lies in the fact that restraint of even the guilty must not be accomplished by the destruction and annulment of fundamental principles that are the only safeguards of the innocent.

The fundamental principles underlying *res adjudicata* are salutary. If the final judgment of a court having jurisdiction of the persons and of the subject-matter be not final and conclusive between the same parties and involving the same *dispute* or *offense* then indeed are we drifting on an unchartered sea in a ship with neither sail or rudder.

We make no apology for our lengthy re-statement of fundamental and well known principles for the reason that we are confronted with a situation that may arise when a court may be impelled to free one guilty man rather than to nullify fundamental principles for the protection of the innocent.

The evidence in the case before us discloses that on May 12, 1931 (being the second day of the May Term of the Circuit Court of Jackson County, Missouri, and in Division No. 3 thereof) the petition for a writ of *habeas corpus* of the applicant herein was filed and designated No. 343,708. Temporary writ was granted and made returnable forthwith. It is shown that hearing was had on said writ on May 27, 1931. It is further shown as follows:

"15th day of the May Term, 1931, Wednesday May 27, 1931. In Re Application of Ralph Messina for writ of *habeas corpus*, No. 343,708.

"Now on this day this cause coming on for hearing upon the application of petitioner for writ of *habeas corpus* and the evidence being heard and considered by the court the prisoner is by the court released and discharged."

Above proceeding involved· extradition proceeding wherein same charge as is involved herein was therein involved, and wherein the Governor of Missouri, at that time, issued an extradition warrant such as issued herein.

The connection and relation of the issues involved in case No. 343,708, *supra,* and in the case at bar is fixed by stipulated agreement, to-wit, that this writ of extradition is against the same person and predicated upon the same offense as the writ of extradition issued in 1931, upon which the *habeas corpus* proceedings were instituted as before recited. We find nothing in the return of respondent, in the reply of applicant, nor in the evidence from which we can conclude that any new state of facts warranting restraint of applicant is shown.

The principle that controls under the facts presented in the case at bar is well stated in the opinion in Weir v. Marley, 99 Mo. 484, wherein after a general discussion of cited cases, l. c. 489 is shown:

"From these cases may be deduced the doctrine·that the principle of *res adjudicata* does not apply in cases of *habeas corpus* to judgments remanding the prisoner, or to judgments discharging the prisoner, where a new state of facts, warranting his restraint, is shown to exist different from that which existed at the time the first judgment was rendered. That it does apply to a judgment discharging the prisoner, where no such new state of facts is shown, may as readily be deduced from the case *Ex parte Jilz,* 64 Mo. 205. The distinction thus made between judgments remaining, and those discharging the prisoner, grows out of the nature of the writ whose *raison d'etre* is the protection of personal liberty."

In the above opinion the court quotes with approval and comment from Freeman on Judgments (3 Ed.), sec. 324, as follows:

"The principles of public policy requiring the application of the doctrine of estoppel to judicial proceedings, in order to secure the repose of society, are as imperatively demanded in the cases of private individuals contesting private rights under the form of proceedings in *habeas corpus,* as if the litigation were conducted in any other form. Otherwise, as is well stated in the opinion of Senator Paige (Mercein v. People, 25 Wendell, *supra*) such unhappy controversies as these may endure until the entire improverishment, or the death of the parties, renders their farther continuance impracticable. If a final adjudication upon a *habeas corpus* is not to be deemed *res adjudicata,* the consequences will be lamentable. This favored writ will become an engine of oppression, instead of a writ of liberty."

The principles as laid down in Weir v. Marley, *supra,* follows in line with former decisions of the Supreme Court of Missouri, and has since its publication been followed by the courts of this State and no expression of unfavorable comment appears ever to have been made.

The evidence in this case as to the adjudication in 1931 is undis-

puted to the effect that in that case wherein the same person and the same offense as herein involved was therein involved, the judgment therein rendered to the effect that the issue as to whether or not the applicant herein is a fugitive from justice was taken up, and evidence heard and considered, and the prisoner was released and discharged, stands unchanged. For eight long years that judgment of record has stood unchallenged and to the date of this hearing no motion has been filed nor no proceedings had in that court to change or modify same has ever been resorted to.

Under such a showing of fact and guided by those salutary principles for the protection of personal liberty, we can reach but one conclusion. The preliminary writ issued herein is made permanent and the applicant Ralph Messina is ordered released and discharged.

*Kemp, J.,* concurs; *Bland, J.,* not sitting.