[Crim. No. 5046. In Bank. July 13, 1951.]

In re CHARLES WALKER KIMLER, on Habeas Corpus.

Ernest Spagnoli, at request of Petitioner appointed by Supreme Court, for Petitioner.

Fred N. Howser and Edmund G. Brown, Attorneys General, B. Abbott Goldberg and Clarence A. Linn, Deputy Attorneys General, for Respondent.

EDMONDS, J.—By his petition for a writ of habeas corpus, Charles Walker Kimler is attacking the right of this state to continue his imprisonment after he was released upon parole. He asserts that, in effect, the parole granted to him was a pardon. He also relies upon a judgment in Missouri by which he was released from custody following his arrest upon a warrant of extradition.

After having been convicted in this state and sentenced to life imprisonment under each of three separate judgments, the sentences to run concurrently, he was released upon

parole and delivered into the custody of officers of Illinois to complete a term of imprisonment there. The condition of the parole was that, upon his release from imprisonment in Illinois, he would report to the parole officer of California. However, when released by Illinois, he refused to recognize the authority of California over him. In Missouri, he was arrested upon a warrant issued pursuant to extradition proceedings initiated by the Governor of California. He resisted extradition, and obtained his release upon a writ of habeas corpus. Later when he was found in Washington, he was extradited and returned to this state where he is now imprisoned under the judgments and sentences entered upon his convictions here.

As the basis for relief from his present imprisonment, Kimler asserts that the judgment in the Missouri proceeding is a final determination that the action of the California authorities in releasing him to Illinois was a pardon which bars his further imprisonment in this state. There are two answers to this contention. ▇ First, the Missouri court did not purport to determine the effect of Kimler's release by the prison authorities of this state. ▇ In the second place, that question could not have been adjudicated; because of the limited scope of inquiry in a habeas corpus proceeding in connection with extradition, there was no jurisdiction to do so.

In Missouri, Kimler contended that "when the State of California attempted to parole him into the custody of the Illinois authorities, this act upon their part operated as a complete pardon for the crime he was sentenced for in California. . . ." However, the court did not undertake to decide that question. Preliminarily, it pointed out " . . . that this is not a new requisition on a new complaint, but a requisition on this old matter. . . ." It then found that " . . . the *facts and circumstances are not sufficient to justify* the surrender and extradition of the petitioner to the State of California. . . ." The judgment declared that " . . . *no sufficient cause for the detention* of said petitioner appearing, it is ordered . . . that the Writ of Habeas Corpus be sustained and made permanent, and that the petitioner . . . be . . . discharged from imprisonment and detention for the cause aforesaid." (Italics added.)

▇ By the clear language of the Missouri judgment, the only fact determined was that the "facts and circumstances are not sufficient to justify" extradition, and "no

sufficient cause for the detention" of Kimler was shown. It does not purport to be a final adjudication that the parole to Illinois authorities was the equivalent of a pardon. No broader interpretation of the judgment is warranted. Furthermore, such a construction would be directly contrary to the fundamental principles relating to jurisdiction.

The scope of inquiry in a summary proceeding in habeas corpus to prevent extradition is necessarily narrow, and as a general rule it is necessary and proper to pass only on the legality of the requisition and rendition. The only inquiry to be made is whether the statutory prerequisites have been complied with." (39 C.J.S. 549, 550.) "The courts in a Habeas Corpus proceeding of this kind, where the prisoner is arrested for extradition, cannot go into a trial of the merits of the cause. The proceeding is only an initiatory step to a trial in another State. As to the guilt of the prisoner, they are not allowed to inquire. Their judicial powers are limited to a determination on the sufficiency of the papers and the identity of the prisoner." (*Kurtz* v. *Florida*, 22 Fla. 36, 45 [1 Am.St.Rep. 173].)

The United States Supreme Court has described the nature of habeas corpus proceedings incident to extradition in the following language: "It is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt . . . the proceedings assimilate very closely those commenced in any State for the arrest and detention of an alleged criminal. They go upon the theory that extradition is but a mere step in securing the presence of the defendant in the court in which he may lawfully be tried." (*Matter of Strauss*, 197 U.S. 324, 333 [25 S.Ct. 535, 49 L.Ed. 774].)

The contention made by Kimler before the Missouri court that he was not a fugitive because he had been pardoned is similar to the one considered in *Drew* v. *Thaw*, 235 U.S. 432, 439, 440 [35 S.Ct. 137, 59 L.Ed. 302], wherein Justice Holmes said: "But this is not Thaw's trial. In extradition proceedings . . ., the purpose of the writ is not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried. . . . And even if it be true that the argument stated offers a nice question, it is a question as to the law of New York which the New York courts must decide."

So in the present case, the merits of Kimler's defense were not for the Missouri court to determine. The ques-

tion as to whether Kimler violated his parole by going to Missouri after he was released from prison in Illinois is one for determination by the courts of California. "If the court on *habeas corpus* inquires into the merits of the charge against the prisoner or into the motives which inspired the prosecution in the demanding State, it exceeds its authority under the constitutional and statutory provisions regulating the extradition of criminals. The mandate of the constitution requires 'a person charged in any State with a crime' to be delivered by the asylum State to the State whose laws he has violated. That State alone can determine the guilt or innocence of the offending party. The theory and the intention of the constitutional and statutory provisions are that the offender shall be compelled to submit himself for trial to the courts of the State in which the offense was committed, and hence it would be usurpation of authority for the courts of another State to undertake to determine the question of his guilt in a *habeas corpus* proceeding." (*Commonwealth* v. *Superintendent County Prison,* 220 Pa. 401 [69 A. 916, 21 L.R.A.N.S. 939], as quoted in *In re Ray,* 215 Mich. 156, 165 [183 N.W. 774].)

Moreover, this court should not place upon the judgment a construction which is out of harmony with the decisions of the highest court of the state in which it was rendered. In *State* v. *Hoffmeister,* 336 Mo. 682 [80 S.W.2d 195], the Supreme Court of Missouri had before it an application for a writ of certiorari to quash a judgment in a habeas corpus proceeding which discharged a paroled convict from the agent's custody. Rosenberg, an inmate of an Illinois penitentiary, had been given permission to reside temporarily and conditionally in Missouri. Upon information that he was under arrest upon a charge of having violated the law of Missouri, the warden of the Illinois institution ordered him returned to custody in the penitentiary pending a decision by the department of public welfare of Illinois upon the question of whether he had violated his parole. When arrested in Missouri upon an extradition warrant, Rosenberg attempted to secure his release in a habeas corpus proceeding. "At the trial it was admitted that the requisition conformed to the Federal statutes and presented a prima facie case. However, it was contended that Rosenberg had not violated his parole, and for that reason was not a fugitive from justice. The circuit court so found and discharged him. This was the only question presented. Illinois con-

tends that the courts of an asylum state are without jurisdiction on *habeas corpus* to determine the question of the guilt or innocence of the person in the custody of the agent of the demanding state. The contention must be sustained. It has been so ruled by all the authorities. [18 U.S.C.A., § 662, note 61, pp. 329, 330, 331.] It follows that the proceedings and record of the Circuit Court of the City of St. Louis in the *habeas corpus* case should be quashed.'' (*State* v. *Hoffmeister, supra,* at p. 684; quoted with approval in *Ex parte Foster,* 60 Okla. Cr. 50 [61 P.2d 37, 39, 40].)

In the Hoffmeister case, as here, the petitioner contended that he was not a parole violator. Rosenberg admitted his status as a parolee but argued that he had done nothing contrary to the terms of his parole. Kimler says he is not a parole violator, although substantially charged as such, because his parole became a pardon when the California authorities permitted him to be taken into custody by Illinois. The Supreme Court of Missouri held that Rosenberg's rights were governed by the rule that the asylum state may not inquire into the guilt or innocence of the accused; the question presented was for the determination of the demanding state. This is equally true as to Kimler, and his discharge in habeas corpus in Missouri is not res judicata in the present proceeding.

Kimler also contends that California relinquished all jurisdiction to enforce completion of his unexpired term of imprisonment by releasing him to the State of Illinois. He states that he did not voluntarily accept the parole to further imprisonment in Illinois, and argues that statements appearing in his ''Ticket of Leave,'' which are contrary to his present position, were ''evidently added after petitioner's signature was placed thereon.''

Pursuant to an order of this court, a referee was appointed to hear and take testimony directed and responsive to the following questions:

(1) Did Kimler sign a ''Ticket of Leave'' which then stated: ''You are being paroled into the custody of the Illinois State Authorities to be by them confined. In the event you are released from their custody prior to the expiration of your term of California imprisonment, you will contact the California State Parole Officer and abide by the instructions he will give you.''

(2) Did Kimler sign the ''Ticket of Leave'' in the pres-

ence of O. C. Morehouse, and did O. C. Morehouse affix his signature as a witness thereto at that time?

(3) Did Kimler sign a letter dated November 10, 1943, stating: "I understand that I am being paroled into the custody of Illinois State Authorities and should I be released by them before the expiration of my sentence I am to report to the Parole Officer. I also understand that failing to do so will constitute a violation of my parole."

(4) Was the letter of November 10, 1943, signed by Kimler in the presence of O. C. Morehouse, and did O. C. Morehouse affix his signature as witness thereto at that time?

(5) Did the Board of Prison Terms and Paroles order the release of Kimler from the California State Prison at Folsom on parole to the custody of officers of the State of Illinois for the purpose of subjecting him to further imprisonment in that state?

After hearing testimony, upon these issues, the referee made findings answering each question in the affirmative. The only objection to them made by Kimler concerns the determination that he was released in this state for the purpose of further imprisonment in Illinois.

Kimler's argument may be summarized by the following excerpt from his counsel's brief: "The testimony adduced before the Referee shows that Kimler was granted a parole and that he was extradited. Evidently the extradition would not have been made effective unless accompanied by a 'parole.' And, the 'parole' was not one that was accepted by or wanted by Kimler, as his testimony shows. Kimler had no desire to return to Joliet and complete there a term of imprisonment that he contended and still contends he was not legally required to complete. *There is no question but what Kimler was extradited.* The evidence and proof introduced before this Court's Referee shows that beyond doubt. Parole is a false quantity inasmuch as Kimler was removed, tied up in chains and handcuffs, from Folsom state prison, and delivered over to Illinois agents who were armed, not with parole papers, but with extradition papers, towit a warrant of rendition, whereby the Governor surrendered Kimler to Illinois."

Essentially the same position was taken by one Marzec who sought to be released from the state prison upon the ground that his parole "never in fact became effective." Marzec also claimed that he "never was released on parole" but "was removed from said Folsom Prison by the authori-

ties of New Mexico State Prison in their custody, and through and on account of extradition papers signed by the Governor of California." Equally applicable to the present case, the court said: "But as Marzec went to the New Mexico prison voluntarily under a conditional parole, this state's jurisdiction over him continued. When he later refused to comply with the condition which had been imposed upon him, and his parole was revoked, he became a fugitive from justice within the meaning of the federal extradition statute." (*In re Marzec*, 25 Cal.2d 794, 799 [154 P.2d 873].)

In the present case, the evidence fully supports the referee's finding that Kimler, in connection with his application for parole, wrote a letter to Lyle Egan, who was then clerk of the State Board of Prison Directors and secretary to the Board of Prison Terms and Paroles, requesting a personal interview "relative to a detainer placed against" him. At the interview, Kimler requested that arrangements be made for his release from the Folsom prison to be returned to the Illinois prison. On November 10, 1943, an agent of Illinois took delivery of Kimler who signed the "Ticket of Leave" and his letter of that date setting forth the conditions of his parole.

Considering these facts, it is clear that Kimler went to the Illinois prison voluntarily under a conditional parole, and this state's jurisdiction over him continued. (*In re Marzec, supra.*) He might have rejected the offer of parole, but once having elected to accept parole, he is bound by the express terms of the conditional release. (*In re Tenner*, 20 Cal.2d 670, 674 [128 P.2d 338].)

The exceptions to the findings of the referee are overruled, and his determinations are adopted as the findings of this court.

The order to show cause is discharged, and the application for the writ of habeas corpus is denied.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

In this case the following situation is presented. In 1936 petitioner was convicted in this state on several counts of extortion and kidnapping for the purpose of extortion and sentenced to three life terms to run concurrently. He served in a prison in this state until November, 1943. When he was

convicted here, he was under parole commencing December, 1928, from Illinois, having been convicted of forgery in that state. The Illinois authorities had revoked his Illinois parole and filed a detainer request with the California prison authorities, inasmuch as his Illinois term had not been completely served. In March, 1943, the California authorities decided to parole petitioner, and in November did so, to the custody of Illinois, where he would continue to serve the Illinois term. The condition of the parole was that upon release by Illinois, petitioner would contact the California parole officer and abide by his instructions. The state does not deny that no detainer of petitioner was filed with the Illinois prison authorities. Petitioner was released by Illinois in 1947, and upon his refusal to submit himself to California parole officers, his parole was revoked. He went to Missouri where, after being taken into custody pursuant to extradition proceedings instituted by California, he was ordered released from custody by a Missouri court in habeas corpus proceedings. (Those proceedings are later discussed herein.) He went to Oregon, then to Washington, from which state he was finally extradited to California, where he is now held to complete his term since he violated his parole.

The majority opinion asserts that the judgment in habeas corpus proceedings releasing Kimler in Missouri is not res judicata because the same issues are not involved and the Missouri court did not have jurisdiction to decide the issues. Neither of those propositions is correct.

In connection with the Missouri habeas corpus proceedings, it is clear that the same issues were involved as are now presented, that is, the waiver by California of further jurisdiction over petitioner rather than, as claimed by the state, the sufficiency of the warrant in the Missouri extradition proceedings.

In the Missouri case, petitioner alleged in his application that he was being held on a warrant for violation of his California parole; that the Governor had issued a warrant for his arrest pursuant to extradition proceedings on the basis that petitioner was a fugitive from justice; that he was not a fugitive from justice for he was convicted and imprisoned in California, then he was granted what was "termed" a parole into the custody of the Illinois authorities and taken by them to Illinois; that no "hold order" was placed by California with the Illinois authorities; that when California "attempted to parole him into the custody of the Illinois

authorities, that this act upon their part operated as a complete pardon for the crime he was sentenced for in California and served 7 years thereof, and that they have no right or authority under the law or under the Constitution of the United States to extradite him as a fugitive from justice; that he has committed no crime since his release from the California State Penitentiary or the Illinois State Penitentiary, and is living the life of a clean, honest citizen, and for the State of California to be permitted to bring him back there and serve in the Penitentiary for the rest of his natural life would be cruel and inhuman punishment after once having pardoned him for his offense." No contention was made that the request or warrant in the extradition proceedings was insufficient.

The return to the application for the writ rested on the extradition papers and that Kimler was a fugitive from justice.

The stipulated facts joined in by the extradition agent for California set forth the events heretofore mentioned, including the parole papers. They show that Kimler was convicted and imprisoned in California; that he signed the parole ticket of leave to Illinois; that thereafter he "was taken by officers and agents of . . . Illinois who handcuffed him and took him from the California State Prison at Folsom, with the consent and acquiescence of the parole authorities of California and returned him to . . . Illinois where he was again incarcerated in the Illinois State Penitentiary at Joliet until about the 9th day of July, 1947, when he had completed his sentence and was then discharged by the State of Illinois"; that he refused to submit to the parole officers in Missouri or accept a California parole.

At the hearing it was shown that Kimler had already been convicted of the crime in California, rather than being merely charged with it; that a detainer notice had been filed by Illinois with the California prison authorities and no parole could be granted when such was the case. The judge questioned the California agent in regard to whether Kimler was only charged or had already been convicted, asking: "So he has already been tried and there has been a judgment on him, and the parole was based on that? From this Warrant it would appear there was a new charge against him. . . . I suppose there is not any question but that this is not a new requisition on a new complaint, but a requisition on this old matter? MR. BRENNAN (California agent): That is right.

MR. HOUGH: That is agreed, your Honor. There is nothing pending against him in the State of California, except that which has already been adjudicated. THE COURT: The Court orders the discharge of the petitioner from custody.'' The plain inference is that the judge wanted to make clear that there was not a charge against Kimler other than the one of which he was convicted, thus indicating that he felt Kimler's claim that California had waived any further claim over him under the conviction was well taken, and, as there was no new charge, the prisoner should be discharged for he was not a fugitive from justice. This is further evinced by the judge's judgment of discharge where he stated: ''The Court finds that the *facts* and *circumstances* are not sufficient to justify the surrender and extradition of the petitioner to the State of California and no sufficient *cause for the detention* of the said petitioner appearing, it is ordered by the Court that the Writ of Habeas Corpus be *sustained and made permanent,* and that the petitioner, Charles Walker Kimler, be, by Arthur Mosely, Sheriff of St. Louis County and Joseph B. Brennan, Agent of the State of California, discharged from imprisonment and detention for the cause aforesaid.'' (Italics added.) The ''facts and circumstances'' referred to in the judgment indicate the delivery of Kimler to Illinois without any detainer other than some defect in the extradition warrant, and the judgment is presumed to be responsive to the claim made in the application. We may presume that the judgment was based upon the claims made in the pleadings rather than an unmentioned ground. (See *Woolverton* v. *Baker,* 98 Cal. 628 [33 P. 731].) Moreover, in considering the queries by the judge concerning whether the extradition was based on an old or new charge, it has long been the practice to treat a parole violator as a person charged with a crime in extradition proceedings. (See *In re McBride,* 101 Cal.App. 251 [281 P. 651]; cases cited 78 A.L.R. 424; 22 Am.Jur., Extradition, § 25.)

Thus, I have presented and decided in favor of Kimler in the Missouri proceedings the question of whether the delivery of Kimler to the Illinois authorities by California under the circumstances established that California had relinquished any further claim over Kimler even though he signed the ticket of leave. (See similar question considered: *In re Marzec,* 25 Cal.2d 794 [154 P.2d 873]; *In re Whittington,* 34 Cal.App. 344 [167 P. 404]; and *People* v. *Bartley,* 383 Ill. 437 [50 N.E.2d 517].)

The agent designated by California to receive Kimler in the Missouri extradition proceedings was active and participated in the habeas corpus matter. Although he did not have actual custody of Kimler (he was being held by a Missouri sheriff), he was named a respondent therein. He joined in the stipulation of facts and testified at the hearing. Under these circumstances, California was adequately represented in the habeas corpus cause.

The discharge of Kimler in Missouri must be treated as res judicata on the issue above mentioned, that is, that there is no longer any basis for California to imprison Kimler arising from his conviction here, and therefore he is entitled to a discharge in this proceeding. The general policy of treating a discharge in habeas corpus as final has been established. "No person who has been discharged by the order of the court or judge upon habeas corpus can be again imprisoned, restrained, or kept in custody for the same cause, except in the following cases: 1. If he has been discharged from custody on a criminal charge, and is afterwards committed for the same offense, by legal order or process; 2. If, after a discharge for defect of proof, or for any defect of the process, warrant, or commitment in a criminal case, the prisoner is again arrested on sufficient proof and committed by legal process for the same offense." (Pen. Code, § 1496.) In the instant case it is clear that the Missouri proceeding does not fall within either of the two exceptions. It was not a case where the accused was discharged from custody for some defect in the process or trial proceedings. Further it is stated: "Every person who either solely or as a member of a court knowingly and unlawfully recommits, imprisons, or restrains of his liberty, for the same cause, any person who has been discharged upon a writ of habeas corpus, is guilty of a misdemeanor." (Pen. Code, § 363.) This court has said on the subject: "A judgment of discharge upon habeas corpus may or may not be res adjudicata, but this will depend wholly upon the questions necessarily determined in the decision upon the writ. The rights of prisoners under the writ of habeas corpus were first crystallized in the English Habeas Corpus Act of 31 Car. II. By section 6 of that act, for the prevention of unjust vexation by reiterated commitments for the same offense, it was enacted 'that no person or persons which shall be delivered or set at large upon any habeas corpus, shall at any time hereafter be again imprisoned or committed for the same offense by any person or

persons whatsoever, other than by the legal order and process of such court wherein he or they shall be bound by recognizance to appear, or other court having jurisdiction of the cause.' In this there was not only no recognition of the principle here contended for by petitioner, but there was a distinct recognition of the contrary, in that it is declared merely that he cannot be again imprisoned for the same offense 'other than by the legal order and process of such court,' etc. And in the *Attorney-General etc.* v. *Quok Ah Sing*, 5 P.C. 179, where a Chinese coolie was discharged the second time upon habeas corpus, solely upon the ground that he had been committed a second time for the same offense, contrary to the sixth section of 31 Car. II, the privy council, speaking by Lord Justice Mellish, said they could not agree with the construction which the chief justice put upon this section of the statute: 'The principal object of the section seems to have been to prevent persons who had been brought up on a writ of habeas corpus and discharged on giving bail and entering into their own recognizance from being again arrested for the same offense and obliged to sue out a second writ. This appears from the provision by which the person discharged may be again arrested by the order of the court, wherein he shall be bound by recognizance to appear. . . . Though I think, however, it [section 6] can only apply when the second arrest is substantially the same cause as the first, so that the return to the second writ of habeas corpus raised for the opinion of the court the same question with reference to the validity of the grounds of detention as the first.' This is but another way of stating the proposition that the discharge upon habeas corpus operates as a bar and estoppel only as to the particular proceeding or process under review, and it is res adjudicata only upon the same question presented under the same state of facts. Thus it has been held that a discharge upon habeas corpus for failure of proof does not bar further prosecution upon another indictment. In *In re Crandall*, 59 Kan. 671, it is accordingly held that where a court discharges a petitioner because no offense was alleged for which he could be prosecuted, its order not only restores him to liberty, but terminates pending proceedings against him, and he cannot be again arrested or held in custody unless a new prosecution is instituted against him. So in *State* v. *Holm*, 37 Minn. 404, it was held that a discharge upon habeas corpus for defect of proof merely terminates the particular proceeding so that the party cannot

be further prosecuted except by a new proceeding instituted upon sufficient evidence. And in the case of *In re White,* 45 Fed.Rep. 237, it is said: 'To support the plea of res adjudicata, the burden was upon the relator to show that some issue had been heard and determined in his favor in the prior [habeas corpus] proceeding, of such nature as to constitute an estoppel upon a reinvestigation of the same question. . . . In the absence of evidence, either upon the face of the record or from extrinsic sources, showing the prior discharge from arrest granted the relator was based upon a hearing and determination of some material issue, like that of identity, it cannot be held that anything is shown creating an estoppel against the proceeding now pending for the arrest and removal for trial of the relator . . .' " (*In re Begerow,* 136 Cal. 293, 297 [68 P. 773, 56 L.R.A. 528].) A similar view has been expressed in other jurisdictions, including Missouri. (See *Ex parte Messina,* 233 Mo.App. 1234 [128 S.W.2d 1082]; *United States* v. *Chung Shee,* 76 F. 951 [22 C.C.A. 639]; *In re Crandall,* 59 Kan. 671 [54 P. 686]; 25 Am.Jur., Habeas Corpus, § 157; 2 Freeman on Judgments, § 827, p. 1759 et. seq.) For illustration, in *Ex parte Messina, supra,* the Missouri court was concerned with a prisoner who was held pursuant to extradition proceedings by the Missouri police on warrant of the governor of that state at the request of the governor of Kansas. The Kansas agent appeared. The prisoner sought habeas corpus and pleaded a release on a writ obtained eight years previous on similar extradition proceedings where it was found that the prisoner was not a fugitive from justice, for he had not been in Kansas at the time of the crime. His plea was upheld, no new facts appearing.

The majority opinion relies upon *State* v. *Hoffmeister,* 336 Mo. 682 [80 S.W.2d 195], but as seen above, *Ex parte Messina, supra,* is a later and controlling decision. I think it is clear, therefore, that the Missouri court did have jurisdiction and did decide the pertinent issue. Its adjudication should be respected. No reason for ignoring it is given.

I conclude, therefore, that a discharge in habeas corpus under the circumstances here presented, if made either in California or Missouri, would be res judicata in another proceeding in the same state.

It is the general policy of this state to give conclusive effect to the judgments of sister states. "The effect of a *judicial record of a sister state is the same in this state as in*

*the state where it was made,* except that it can only be enforced here by an action or special proceeding . . .'' (Code Civ Proc., § 1913.) (See ˙ *Biewend* v. *Biewend,* 17 Cal.2d 108 [109 P.2d 701, 132 A.L.R. 1264]; *Gilmer* v. *Spitalny,* 84 Cal.App.2d 39 [189 P.2d 744].) And the writ of habeas corpus is the writ of freedom and where there has been a discharge thereunder, the prisoner should not be further harassed under the same set of circumstances. The State of California actively participated in the Missouri court proceedings and I assume that court applied California law in arriving at its conclusion. There is, therefore, no reason why the Missouri judgment should not be given binding effect.

There are cases which have said that a discharge through habeas corpus in another state will not be given effect in the state where the accused is charged with a crime. (See *Ex parte Silverman,* 69 Ohio App. 128 [42 N.E.2d 87]; *State* v. *Wall,* 187 Minn. 246 [244 N.W. 811, 85 A.L.R. 114]; *Letwick* v. *State,* 211 Ark. 1 [198 S.W.2d 830].) In the Silverman and Letwick cases, the question of waiver of further right to punish the prisoner was not involved. The issue in the asylum state habeas corpus proceedings was whether under the conditions *then* existing the prisoner was lawfully in custody. They did not concern a situation such as we have here where the conditions and issues are identical. Nor were the same issues presented in the Wall case, where the court relied on the premise that the discharge would not be res judicata in the asylum state. As we have seen, it would be res judicata in Missouri, the asylum state here, as well as in California, the demanding state.

Similar comments are applicable to the general rule that a discharge on habeas corpus from custody grounded on extradition proceedings does not bar subsequent arrest, for in those cases the release is bottomed on some defect in the extradition proceedings such as the warrant or otherwise, and naturally when those defects are corrected, the second habeas corpus proceedings involve new issues and different facts. Whatever may be the usual rule, I see no valid reason for not giving conclusive effect to the Missouri judgment here where the issues are identical, the proper law was applied, and this state was adequately represented.

It has been held in the federal courts that habeas corpus was not available to release a prisoner held on an extradition warrant where the grounds claimed were that he would be given unconstitutional treatment if the prisoner were re-

turned to the demanding state. (*United States* v. *McClain,* 42 F.Supp. 429; *Johnson* v. *Matthews,* 182 F.2d 677.) But the contrary has also been held. (*Johnson* v. *Dye,* 175 F.2d 250, reversed for failure to exhaust remedies in state court, *Dye* v. *Johnson,* 338 U.S. 864 [70 S.Ct. 146, 94 L.Ed. 530]; see *Harper* v. *Wall,* 85 F.Supp. 783; *Application of Middlebrooks,* 88 F.Supp. 943; *Ex parte Marshall,* 85 F.Supp. 771.) The court in *Johnson* v. *Matthews, supra,* seemed to think it did not have jurisdiction but here the Missouri court took jurisdiction and decided the identical issue now presented, and there is no reason why we should ignore its adjudication in view of the strong policy of this state to give "full faith and credit" to judgments of sister states. The Matthews case does not hold, as has been suggested, that a court in an asylum state could not constitutionally have jurisdiction to decide the issue of whether the demanding state has waived all claim to the exaction of further penal punishment. While it may not be customary to settle such an issue in habeas corpus proceedings in the asylum state following the initiation of extradition proceedings, yet that question was presented here with this state participating and was decided. The policy arguments with respect to extradition might well have been advanced by California in the Missouri proceedings, but were not. Now we have the solemn adjudication of Missouri—a sister state—and the settled policy is to recognize that adjudication. In the interests of interstate harmony, it should not be disregarded.

I would therefore release petitioner from custody forthwith.