[Crim. No. 4513. Second Dist., Div. One. July 19, 1950.]

In re EUGENE BACKSTRON, on Habeas Corpus.

Herbert W. Simmons, Jr., Edward C. Maddus, Sanford L. Carter and Wrin, Rissman & Okrand for Petitioner.

A. L. Wirin, Fred Okrand and Wilbur F. Littlefield for American Civil Liberties Union, Amicus Curiae on behalf of Petitioner.

W. E. Simpson, District Attorney (Los Angeles), and Jere J. Sullivan, Deputy District Attorney, for Respondent.

DORAN, J.—The petition alleges that petitioner is "unlawfully restrained of his liberty . . . by virtue of a warrant for extradition . . . pursuant to a demand . . . by the Governor of the State of Mississippi."

In substance it is alleged that the conviction in Mississippi was unlawful and in violation of the Fourteenth Amendment in that "petitioner was sentenced by said court by use of a forced confession"; that petitioner was denied counsel; that the judgment, "imposed upon the petitioner cruel and inhuman punishment" in connection with which many details were alleged; that "for this court to render a judgment that will allow the agents of the State of Mississippi to take the petitioner into custody would violate the due process clause of the Fourteenth Amendment to the Constitution of the United States, and the United Nations Charter, in that this would constitute state action of the State of California and would di-

rectly cause his return to the State of Mississippi to effectuate a sentence of cruel and inhuman punishment . . . for he, a Negro, has challenged the state of Mississippi, its brutality which is permeated by hatred of the Negro, and its open, vicious and deadly programs of terrorism against the Negro citizen'' and that ''The action of the Governor of the State of California in issuing the warrant of extradition, and officers of the Sheriff's Department of Los Angeles, under said warrant, are contrary to the prohibitions of the Fourteenth Amendment to the Constitution of the United States, in that they are actions of the State in aid of a violation of constitutional rights guaranteed to him, the petitioner, by the due process clause of the federal constitution.''

Petitioner's argument, in support of the above contention, relates generally in substance to ''the segregated penal system of the State of Mississippi'' and the contended legal effect thereof in that the violations of due process, such as a lack of counsel, forced confession, lack of fair trial, sentence to cruel and inhuman punishment, and discrimination ''are properly included within the scope of habeas corpus.''

It is well settled that the scope of inquiry in such a proceeding is limited to a determination of the sufficiency of the papers and of the identity of the prisoner. (See 25 Am. Jur., p. 192, § 67; 22 Am.Jur., p. 254, § 15; 39 C.J.S., pp. 549-550, § 29, also p. 562, § 39(1).)

A recent case decided by the United States Court of Appeals for the District of Columbia involved the same issues presented in the within petition and declared that, *''Habeas corpus* is the proper process for testing the validity of the arrest and detention by the authorities of the asylum state for extradition purposes. But a petition for a writ for that purpose tests only that detention; it does not test the validity of the original or the contemplated incarceration in the demanding state. The Supreme Court has established the scope of the extradition inquiry and the issues which are presented by it. The state cases and other federal court cases upon the subject are myriad. In essence the rule is that the court may determine whether a crime has been charged in the demanding state, whether the fugitive in custody is the person so charged, and whether the fugitive was in the demanding state at the time the alleged crime was committed.

''The question before us is whether a court (either state or federal) in the asylum state can hear and determine the constitutional validity of phases of the penal action by the de-

manding state in respect to the fugitive or his offense. We think that it cannot do so. Authorities, sound theory of government, and the practical aspects of the problem all require that conclusion.

"The problem is not merely one of *forum non conveniens.* It involves the interrelationship of governments, both among the states and between the states and the Federal Government. The quoted provision of the Constitution is in the nature of a treaty stipulation between the states, and compliance is a matter of agreed executive comity." (Citing cases.) The opinion continues, "The basic premise of appellant's position is that he could not get fair treatments in the courts of Georgia, either state or federal. Every argument in support of power in the District of Columbia court to consider and determine whether appellant should be released because of anticipated ill-treatment by executive officers of Georgia comes in the final analysis to the essential proposition that appellant's rights would not be protected by the courts of Georgia. Those courts are there. They are charged with the duty of protecting this prisoner and any other in custody in that state. If they perform that duty, appellant would be as adequately protected by their order as he would be by an order of the court here; he would have no basis for applying to the court here.

"We are asked to assume that appellant would not be protected by the courts in Georgia. We not only decline to make the assumption but we repudiate the suggestion that we make it. We will not impugn either the capacity or the integrity of the state courts of Georgia or of any other state. And even if we were to assume, upon the basis of this fugitive's allegations, that the state courts are impervious to his assertions, we would make no such assumption concerning the federal courts having jurisdiction in that state. Those courts of the United States are as capable and faithful as are the courts of this or any other jurisdiction. If that Court of Appeals errs, *certiorari* to the Supreme Court will lie.

"If we will not assume the non-availability of courts in Georgia, we are asked to permit petitioner to present evidence upon that non-availability and then to determine the question. There is an established procedure for the correction of error or dereliction on the part of every court in the country, and where constitutional rights are involved the Supreme Court of the United States stands watchman over every court, state or federal. It would be an act of unwarranted arrogance for

us to ascribe to ourselves virtue superior to that of other courts and so to assert power to hear and determine the faithfulness to duty of a sister court occupying a place like ours in the federal system. We have not the slightest semblance of authority over such courts. We might differ with them in opinion, but to us the availability of the Georgia federal courts to protect appellant is not 'merely a presumption'." (*Lesis A. Johnson* v. *W. Bruce Matthews*, May 1, 1950, 182 F.2d 677.) The authorities all support the foregoing which is the controlling law in the within proceeding.

The petition is denied. And it is ordered that after 15 days have elapsed from and after the filing of this opinion, the Sheriff of Los Angeles County, to whose custody the petitioner is remanded, shall deliver him into the custody of the state agent or agents of the State of Mississippi.

White, P. J., and Drapeau, J., concurred.