[No. 31275. Department One. July 25, 1950.]

THE STATE OF WASHINGTON, *Appellant*, v. RALPH CORDERO, *Respondent.*[1]

*Charles O. Carroll, Frank Harrington,* and *Robert H. Van Eaton,* for appellant.

*Ray A. Greenwood* and *Frank A. Shiers,* for respondent.

DONWORTH, J.—The defendant Ralph Cordero was, by a second amended information filed in the superior court for King county, charged with aiding and abetting Dorothy Nunes in the commission of the crime of negligent homicide by means of a motor vehicle. This information also charged Dorothy Nunes with that crime and in substance alleged that on March 15, 1949, she operated a motor vehicle on the

[1] Reported in 221 P. (2d) 472.

Lake Washington floating bridge in a reckless manner and with a disregard for the safety of others, as the proximate result of which she drove the vehicle into and over the bridge, thereby causing the death of one Shirley Hudson. The concluding language of the information specifically charged Ralph Cordero as follows:

"That the acts of the said DOROTHY MARGARET NUNES, constituting such operations in a reckless manner and with a disregard for the safety of others, are as follows:

"(1) She was traveling at an unlawful rate of speed, to-wit: in excess of fifty miles per hour, and

"(2) She was under the influence of or affected by the use of intoxicating liquor.

"And he, the said RALPH CORDERO, being then and there present as a passenger in and custodian of said automobile, and knowing that the said DOROTHY MARGARET NUNES was under the influence of or affected by the use of intoxicating liquor; did aid or abet, permit, encourage, assist, advise or counsel the said DOROTHY MARGARET NUNES in the unlawful acts as hereinbefore set forth and in the said unlawful operation of the said automobile."

The crime of negligent homicide by means of a motor vehicle is defined in Rem. Rev. Stat., Vol. 7A, § 6360-120 [P.P.C. § 295-93]. By Rem. Rev. Stat., § 2260 [P.P.C. § 112-13], every person who aids or abets in the commission of any crime is declared to be a principal and punishable as such.

Each defendant pleaded not guilty to this information and both were tried jointly.

At the close of the trial, the defendant Ralph Cordero interposed a challenge to the sufficiency of the evidence which was sustained by the trial court. From the order sustaining defendant's motion and dismissing the action as to him, the state has appealed and assigns as error the dismissal of the charge as to Cordero.

The fatal accident occurred about five a. m. on March 15, 1949, on the Lake Washington floating bridge which extends in an easterly and westerly direction across the southern portion of the lake. Dorothy Nunes was driving the automobile involved in the accident and respondent and Shirley

Hudson were passengers therein. The automobile, a new 1948 Oldsmobile sedan, belonged to respondent's wife and had been turned over to him to use.

After the toll was paid at the east end of the bridge, the automobile, traveling west across the bridge, struck an abutment in the center of the roadway at the easterly end of the draw-bridge span, ricocheted against the north railing of the bridge and, after straddling the railing for a distance of one hundred twenty-nine feet, toppled over into the water. Dorothy Nunes was thrown onto the pavement before the car entered the water. Respondent managed to escape while the car was under water and was rescued after clinging for some time to a floating tire. Shirley Hudson was drowned.

In order to determine whether the evidence produced by the state against respondent was sufficient to carry the case to the jury, we must examine the testimony and exhibits bearing upon respondent's connection with this tragedy.

About twelve hours after the accident, respondent, in the King county sheriff's office, signed a statement written by a state patrol officer concerning the events of the preceding night. We quote this statement in full:

"March 15, 1949     5:30 P. M.
"Ralph Cordero of Windsor Hotel Seattle Wash.
"I have lived at the Windsor Hotel approximately 1½ years & during this time was working as a bartender at the Olympic Hotel.

"On March 15, 1949 at around 1:30 or 2:00 A.M., Dorothy Nunes, known to me as Billy Dale, Judy last name not known & Claude E. ElRinger came to my room at the Windsor Hotel to have a drink. *We had about 1½ fifths of whisky. I had been drinking myself in my room before these people arrived.*

"We then went to the parking lot between Seneca & University on 7 Ave and got a 1948 Oldsmobile which was left there in my custody.

"This car is the property of Ruth E. Strauss of 104-2nd St- Bremerton, Wash. She turned this car over to me for my own use about a week previous.

"I drove the car to Claude's Hotel *were* he left us. *Then realizing I was too drunk to drive I let Billy take over the driving.*

"From here we went across the floating bridge and to Bellevue to contact some relatives of Judy to see about adopting a baby. We then decided it was too late to see any one so we drove around for quite a long time, & then returned back across the bridge. Billy was doing the driving all this time. I handed Billy a Dollar bill to pay the toll on both trips through.

"As we left the Toll Plaza the car gained momentum & got traveling at a high rate of speed. I asked Billy several times to slow down but she paid no heed to my warning. The next thing I remember I was under water. I got out through a door, I believe after what seemed I was down 30 feet. I breathed one breath of water in coming up to the surface. I saw a tire & wheel floating a distance away so I swam over to it for to keep me afloat. I was yelling for help & finally, after what seemed a half hour, some one threw a rope and buoy to me. I hung onto this until I was pulled out of the water. I was then taken to the bridge tenders control room where later I was met by some Officers who a little later placed *my* in an ambulance and sent me to the Harbor View Hospital.

"At the hospital I received no attention so I walked out and was picked up shortly afterwards by two Seattle Police officers who took me back to the accident scene.

"There I was placed in a Patrol car with a heater to warm me up. Later I was taken to the County Jail by Officer Appel.

Ralph Cordero

"Witness by Claude N. Dodd
   R. A. Allingham

"I have read the above statement which was given freely by myself of my own free will and accord and state it is true to the best of my knowledge.

Ralph Cordero

"Investigating Officers Taken by Thor Edman, W S P Renton"

(We have italicized the portions which are particularly to be noted.)

In his testimony, respondent repudiated certain material portions of this signed statement and generally contended that he was in pain at the time he signed it and did so in

order to be released from custody and obtain medical attention. He testified that when he stated that "we had one and a half fifths of whisky," he did not mean that quantity had been entirely consumed that morning by the four persons present, but merely that he had that amount of whiskey in his hotel room when he was visited. He further denied that he was too drunk to drive, but testified that he was sober during the visit to his room and during the ride. He testified that he was helping Claude Elringer take a package from the car into the Georgian hotel and that, while he was so engaged, Dorothy Nunes slid into the driver's seat.

According to respondent, no one appeared drunk or acted in any way out of the ordinary. He asked Dorothy if she could drive and if she had a driver's license. She replied that she had a driver's license and used to drive a truck for the army. At no time did he observe anything in her conduct or actions while driving which made him believe that she was in any way under the influence of intoxicants. At one time during the ride he called her attention to the fact that she was exceeding the speed limit in a thirty-five mile per hour zone and she slowed down accordingly. After passing through the toll gate immediately prior to the accident, he asked her two or three times to slow down.

In some respects respondent was corroborated by the toll-gate tender who recalled the automobile stopping at the toll gate on the return trip less than five minutes prior to the accident. He testified that he did not observe anything out of the ordinary in the conduct of the occupants of the car. However, the patrolman who investigated the accident testified that after the accident Dorothy Nunes seemed a little unsteady and had a strong odor of liquor about her person.

It is not the function of the trial court nor of this court to decide whether respondent's signed statement or his oral testimony is more worthy of belief. The sole duty of the courts in a situation such as is here presented is to decide whether there was sufficient evidence of respondent's guilt to warrant submitting the question to the jury.

■ In passing upon a challenge to the sufficiency of the evidence, we are mindful of the rule stated in *Kellerher v. Porter,* 29 Wn. (2d) 650, 189 P. (2d) 223, as follows:

"A challenge to the sufficiency of the evidence, a motion for nonsuit, a motion for directed verdict, or a motion for judgment notwithstanding the verdict admits the truth of the evidence of the party against whom the challenge or motion is made and all inferences that reasonably can be drawn from such evidence, and requires that the evidence be interpreted most strongly against the challenger or movant party and in the light most favorable to the opposing party."

The question for decision in this case is whether, interpreting the evidence most strongly against respondent, he, as custodian of the automobile, knew an appreciable time before the accident happened that Dorothy Nunes was driving in a reckless manner or that she was under the influence of, or affected by the use of, intoxicants and nevertheless permitted her to continue driving.

■ We find no evidence in the record, nor reasonable inference therefrom, which would indicate that respondent knew or should have known that Dorothy Nunes was driving in a reckless manner an appreciable time before the accident. She drove the car from the Georgian hotel in Seattle to Bellevue, then around in that vicinity for some time and back to the toll gate without driving at an unlawful rate of speed or giving any indication of being affected by the use of intoxicating liquor. She was driving continually for approximately two hours during which time she kept within proper speed limitations.

It is true that in his signed statement, respondent stated that after the automobile left the toll gate on the return trip it began to travel at a high rate of speed and that he asked the driver to slow down several times. However, since this occurred but a few seconds prior to the accident it can hardly be said that respondent knew an appreciable time before the accident that she was driving at an unlawful rate of speed.

The only other witness who observed the driver before the accident was the toll-gate keeper who testified that he observed nothing out of the ordinary in respect to her conduct.

Assuming that the portion of respondent's confession wherein he stated that "we had about 1½ fifths of whisky" meant that that quantity was consumed by the four persons present in his hotel room, there is no evidence as to what portion of it was drunk by Dorothy Nunes other than her own testimony that "we all had a drink." This was between two and a half and three hours prior to the accident. The state patrolman who investigated the accident noticed a strong odor of liquor about her person and said that she appeared to be a little unsteady. There was no other evidence from which the jury could have possibly found that respondent knew or should have known that she was affected by the use of intoxicating liquor while operating the car.

The information on which respondent was tried charged him with aiding and abetting Dorothy Nunes (knowing that she was then under the influence of or affected by the use of intoxicating liquor) in the unlawful operation of the automobile in the following respects:

(1) She was traveling at an unlawful rate of speed, to wit: in excess of fifty miles per hour, and

(2) She was under the influence of or affected by the use of intoxicating liquor.

Giving full weight to the rule above quoted from *Kellerher v. Porter, supra,* we are of the opinion that the evidence in this case was not sufficient to carry the case to the jury and permit them to find that respondent was guilty of the crime with which he was charged, to wit, aiding and abetting Dorothy Nunes in the commission of negligent homicide by means of a motor vehicle.

Appellant has cited *State v. Hopkins,* 147 Wash. 198, 265 Pac. 481, 59 A. L. R. 688, as being decisive of the law applicable on this appeal and requiring a reversal of the decision of the trial court. In the cited case, the defendant was

convicted of manslaughter because she aided and encouraged an intoxicated person in the operation of her car which was involved in a fatal accident. However, the proof of the defendant's knowledge of the driver's intoxicated condition is so much stronger than that in this case as to justify reaching a contrary result. After reviewing the evidence in that case, we concluded as follows:

"We think, under all the circumstances shown, that the jury might well conclude that the intoxicated man leaning against Mrs. Hopkins' car, while she was sitting therein, very soon after the collision, was the driver of that car; that his intoxicated condition was such that he was unfit to drive a car; that it was not of sudden acquiring; that in time it extended back at least over the period of the approximately one half hour elapsing from the time that Mrs. Hopkins placed her car in his charge upon leaving her hotel; and that his intoxication was, or should have been, known to Mrs. Hopkins had she used due care in deciding whether or not she would entrust the driving of her car to him. Our opinion is that the evidence is sufficient to sustain the verdict and judgment."

In *State v. Burnett,* 157 Wash. 288, 288 Pac. 918, the trial court had granted a motion in arrest of judgment in a prosecution for possession of intoxicating liquor with intent to sell. The language used in our opinion affirming the trial court very aptly states our conclusion in the present case. We there said:

"The motion is somewhat broad in that it challenges the proof upon every element of the crime charged, and we have therefore been obliged to study and weigh all of the evidence offered. After doing so, we feel obliged to follow the ruling of the trial court. The evidence of the state showed a possibility of guilt, and perhaps was sufficient to arouse suspicion, but there was nothing of a direct or substantial character, and nothing in the conditions and circumstances shown was inconsistent with innocence."

The order of the trial court, sustaining the challenge to the evidence and dismissing the cause as to respondent Ralph Cordero, is affirmed.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and GRADY, JJ., concur.