[Crim. No. 8778. Third Dist. Jan. 7, 1977.]

In re OTIS EDWARD GOLDEN on Habeas Corpus.

## Counsel

Jerome S. Stanley, Inc. and Christopher H. Wing for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Gregory W. Baugher, Deputy Attorneys General, for Respondent.

## Opinion

**PUGLIA, P. J.**—Otis Edward Golden petitions for a writ of habeas corpus challenging the validity of proceedings for his rendition to the State of Washington to answer a felony charge. Petitioner contends that there must be a judicial determination of probable cause in the asylum state before a fugitive may lawfully be rendered to the state which has demanded his return. We issued an order to show cause directed to the Sheriff of Sacramento County.

In his return the sheriff alleges that he took custody of petitioner pursuant to an extradition warrant issued by the Governor of California. Annexed to the return is a copy of the warrant together with copies of the demand and supporting papers from the Governor of Washington. The latter documents disclose that in Spokane County, Washington, petitioner was charged with and tried for the crime of rape; the jury was unable to agree on a verdict and was discharged; a date was then set for retrial; prior thereto an information charging the lesser crime of carnal knowledge was substituted for the original information charging rape; petitioner failed to appear for his second trial and a bench warrant for

his arrest issued; petitioner was thereafter arrested in Sacramento County at the request of Washington authorities and proceedings for his extradition to Washington were commenced.

██ It is not disputed that the demand and supporting papers are in accord with the formal requirements for extradition set forth in Penal Code section 1548.2,[1] or that the Governor's warrant properly issued pursuant to sections 1548.1 and 1549.2. From the demand and supporting papers, however, it does not appear that there has been a judicial determination in the State of Washington of the existence of probable cause to believe petitioner committed the crime of carnal knowledge.[2]

Immediately following his arrest on the Governor's warrant, petitioner was taken before a magistrate as required by section 1550.1. Thereafter petitioner's application for writ of habeas corpus in the superior court, based upon the same ground as urged in the instant petition, was denied. These proceedings were then initiated.

I

Petitioner contends that since extradition proceedings in the asylum state involve a "significant pretrial restraint of liberty" within the meaning of the decision in *Gerstein* v. *Pugh* (1975) 420 U.S. 103, 125 [43 L.Ed.2d 54, 71, 95 S.Ct. 854] (see *In re Walters* (1975) 15 Cal.3d 738, 749 [126 Cal.Rptr. 239, 543 P.2d 607]), a judicial determination of probable cause must precede rendition of an interstate fugitive. Respondent concedes the pretrial restraint of a fugitive's liberty is significant, but contends that the issue of whether such restraint necessitates a prior

---

[1] Unless otherwise noted, all statutory references hereafter are to the Penal Code.

[2] Had not the charge of rape been supplanted by a charge of carnal knowledge, we would be constrained to find otherwise. The rape charge was subject to dismissal at trial for insufficient evidence of guilt (*State* v. *Cordero* (1950) 36 Wn.2d 846 [221 P.2d 472]) either on motion of the petitioner (*State* v. *Sonneland* (1972) 80 Wn.2d 343 [494 P.2d 469]) or on the court's own motion (see former R.C.W. § 10.46.090; Wash. Criminal Rules for Superior Court, rule 8.3). From the absence of such dismissal, we deduce an implied finding by the trial judge of probable cause to believe that petitioner committed the crime of rape. However, after the first trial ended with a hung jury, the cause was reset for trial, the rape charge was abandoned and a charge of carnal knowledge substituted. Rape can be committed without committing carnal knowledge, one of the unique elements of which is that the female victim be under the age of 18 years (former R.C.W. §§ 9.79.010 and 9.79.020). Therefore, we cannot assume that the evidence produced in the rape trial would support probable cause as to the charge of carnal knowledge.

Moreover, under Washington law an information may be filed in superior court without a preliminary hearing on the question of guilt (*State* v. *Jefferson* (1971) 79 Wn.2d 345 [485 P.2d 77, 78]; Wash. Criminal Rules for Superior Court, rule 2.1).

determination of probable cause may not be reached in this proceeding because petitioner has failed to comply with the procedural requirements of section 1550.1.[3]

Section 1550.1 sets forth the procedure by which a fugitive arrested on a Governor's warrant may test the legality of his arrest in habeas corpus proceedings prior to rendition. Respondent relies on the following language of that section: "If the writ is denied or the accused is remanded to custody, and probable cause appears for an application for a writ of habeas corpus to another court . . . the order denying the writ or remanding the accused shall fix a reasonable time within which the accused may again apply for a writ of habeas corpus."

Respondent contends that the quoted provision was intended to impose a jurisdictional limitation upon a fugitive's right to seek review of the legality of his arrest by filing successive petitions for writs of habeas corpus. In denying petitioner's first application, the superior court neither certified the existence of probable cause nor specified a time within which petitioner could apply for a writ of habeas corpus in a higher court.

The above quoted language in section 1550.1 was added in 1959 (Stats. 1959, ch. 725, § 1, p. 2713). We agree with respondent that it was intended to limit a fugitive's right to contest the legality of his arrest on a Governor's warrant. ■ We do not agree, however, that noncompliance with the procedural requirements of section 1550.1 bars substantive review of the petition filed in the present case. The scope of review in habeas corpus proceedings commenced under section 1550.1 is confined to a determination of the sufficiency of the papers from the demanding state and the identity of the prisoner as the fugitive from

---

[3]Section 1550.1 provides: "No person arrested upon such warrant shall be delivered over to the agent of the executive authority demanding him unless he first is taken forthwith before a magistrate, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel. If the accused or his counsel desires to test the legality of the arrest, the magistrate shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. If the writ is denied or the accused is remanded to custody, and probable cause appears for an application for a writ of habeas corpus to another court, or justice or judge thereof, the order denying the writ or remanding the accused shall fix a reasonable time within which the accused may again apply for a writ of habeas corpus. When an application is made for a writ of habeas corpus as contemplated by this section, a copy of the application shall be served as provided in Section 1475 upon the district attorney of the county in which the accused is in custody, and upon the agent of the demanding state."

justice. (*In re Kimler* (1951) 37 Cal.2d 568, 571 [233 P.2d 902]; § 1553.2.) The issue of whether extradition proceedings necessitate judicial inquiry into the existence of probable cause, as raised in the petitions filed both in the superior court and here, is one which is clearly outside the scope of review contemplated by section 1550.1. An analogous situation is created by section 1237.5 which places limitations upon a defendant's right to appeal a conviction resulting from a plea of guilty. Nonetheless, such an appeal is not barred by failure to comply with the requirements of section 1237.5 if it addresses matters other than the validity of the guilty plea. (*People* v. *Ward* (1967) 66 Cal.2d 571, 574 [58 Cal.Rptr. 313, 426 P.2d 881].) Similarly, the instant petition is not barred by noncompliance with the requirements of section 1550.1 since it addresses a matter wholly outside the contemplation of that statute.

## II

We consider the merits of petitioner's contention.

The principle protection afforded a fugitive from justice under the Uniform Criminal Extradition Act (§§ 1548-1556.2) is the right to challenge the legality of his arrest in a habeas corpus proceeding (§ 1550.1; see generally, Cal. Criminal Law Practice II (Cont.Ed.Bar) §§ 27.15-27.17, pp. 723-725). ■ As we have already observed, the scope of review on habeas corpus is limited both by decisional and statutory law and prohibits a judicial determination of probable cause on the issue of guilt. (*In re Kimler, supra,* 37 Cal.2d at p. 571; *In re Katcher* (1952) 39 Cal.2d 30, 31 [243 P.2d 785]; *In re Backstron* (1950) 98 Cal.App.2d 500, 501 [220 P.2d 742]; *In re Harper* (1936) 17 Cal.App.2d 446 [62 P.2d 390]; § 1553.2.) In fact, California courts presume the existence of sufficient evidence to support an information or indictment issued in a state which has made formal demand for extradition of a fugitive from justice. (*In re Russell* (1974) 12 Cal.3d 229, 236 [115 Cal.Rptr. 511, 524 P.2d 1295]; *In re Cooper* (1960) 53 Cal.2d 772, 778 [3 Cal.Rptr. 140, 349 P.2d 956].) This presumption is in harmony with the command of Penal Code section 1553.2 prohibiting inquiry into the guilt or innocence of a fugitive in this state against whom extradition proceedings have been brought. Nevertheless, petitioner disputes the vitality of the foregoing authorities, contending that the holding in *Gerstein* v. *Pugh, supra,* 420 U.S. 103 [43 L.Ed.2d 54], requires a determination of probable cause in relation to guilt since extradition proceedings necessarily impose a significant restraint on liberty. In

*Gerstein,* the federal Supreme Court held that the Fourth Amendment requires a judicial determination of probable cause either before or promptly after arrest as a prerequisite to extended restraint of liberty. (Pp. 114, 125 [43 L.Ed.2d at pp. 65, 72].) Thereafter, our Supreme Court, using *Gerstein* as a point of departure, held that a judicial determination of probable cause is required in every case in which a defendant arrested with or without a warrant and charged with misdemeanor is detained awaiting trial. (*In re Walters, supra,* 15 Cal.3d at p. 747.)

■ The right to extradition is established by the United States Constitution.[4] " '[E]xtradition is simply one step in securing the arrest and detention of the defendant. And these preliminary proceedings are not completed until the party is brought before the court in which the trial may be had. . . . [c]are must be taken that the process of extradition be not so burdened as to make it practically valueless. It is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt.' " (*In re Russell, supra,* 12 Cal.3d at p. 233, quoting from *Matter of Strauss* (1905) 197 U.S. 324, 332-333 [49 L.Ed. 774, 779, 25 S.Ct. 535].)

Extradition is designed to provide a summary executive process by which states may promptly aid one another in bringing to trial persons accused of crime who have sought asylum against the processes of justice (*Biddinger* v. *Commissioner of Police* (1917) 245 U.S. 128, 132 [62 L.Ed. 193, 198, 38 S.Ct. 41]). The constitutional provision for extradition is in the nature of a treaty stipulation entered into for the purpose of securing a prompt and efficient administration of the criminal laws of the states (*Appleyard* v. *Massachusetts* (1906) 203 U.S. 222, 227 [51 L.Ed. 161, 163, 27 S.Ct. 122]). Under this constitutional provision, extradition is not a matter of mere comity, but an absolute right of the demanding state and duty of the asylum state (*In re Russell, supra,* 12 Cal.3d at p. 234; *In re Morgan* (1966) 244 Cal.App.2d 903, 910 [53 Cal.Rptr. 642]). Thus an asylum state does not refrain from undertaking an examination of a fugitive's guilt merely to avoid procedural delays or complications in the rendition procedure. Rather it does so in recognition of the principle that such an inquiry " 'into the merits of the charge against the prisoner or into the motives which inspired the prosecution in the demanding State . . . exceeds its authority under the constitutional and statutory provisions

---

[4]"A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime." (U.S. Const., art. IV, § 2, cl. 2.)

regulating the extradition of criminals. The mandate of the Constitution requires "a person *charged* in any State with a crime" to be delivered by the asylum State to the State whose laws he has violated. That State alone can determine the guilt or innocence of the offending party.' " (Italics ours.) (*In re Kimler, supra,* 37 Cal.2d at p. 572.) The summary nature of the extradition process is not founded upon mere considerations of speed and efficiency in the rendition of fugitives. It is based upon the federal Constitution and implementing statutes which recognize extradition as something more than a matter of mere comity between cooperating states. (*Appleyard* v. *Massachusetts, supra,* 203 U.S. at pp. 227-228 [51 L.Ed. at p. 163]; *In re Russell, supra,* 12 Cal.3d at p. 234; *In re Morgan, supra,* 244 Cal.App.2d at p. 910.)

The perfunctory nature of the extradition process as conceived by the Constitution justifies the limited role played by courts of the asylum state in the rendition of interstate fugitives. ■■■ Since the constitutional and statutory provisions relating to extradition bar inquiry by the asylum state into the merits of the charge against an alleged fugitive, the focus of judicial inquiry in the asylum state is necessarily upon the fugitive status of the accused and not upon the substantive crime. This limited inquiry affords adequate protection against an unfounded restraint of liberty resulting from unjustified extradition since proof may be required in the asylum state that a detained individual is indeed a fugitive from justice and that he is substantially charged with a crime against the laws of the demanding state. (*In re McBride* (1953) 115 Cal.App.2d 538, 541 [254 P.2d 117]; *In re Backstron, supra,* 98 Cal.App.2d at p. 501.) By postponing inquiry into the existence of probable cause until a fugitive is lawfully returned to the demanding state, a necessary accommodation is achieved between an individual's interest in protection against unfounded invasions of liberty and privacy and the state's interest in upholding the constitutional and statutory principles governing extradition.

The order to show cause is discharged and the petition for habeas corpus is denied.

Regan, J., and Evans, J., concurred.

A petition for a rehearing was denied January 27, 1977, and petitioner's application for a hearing by the Supreme Court was denied March 9, 1977.