[Crim. No. 13683. Fourth Dist., Div. One. Aug. 9, 1982.]

In re ROBERT WALLACE GILCHRIST on Habeas Corpus.

COUNSEL

Cecil Hicks, District Attorney, and Nina Brice, Deputy District Attorney, for Appellant.

Roger Agajanian for Respondent.

OPINION

STANIFORTH, J.—The Governor of Oklahoma signed and issued requisition documents on July 10, 1981, charging Robert Wallace Gilchrist had been convicted of larceny and "escape[d] prior to completion of sentence." The Governor's warrant was lodged against Gilchrist who has been residing in California for some time. The Governor of California issued an extradition warrant. Gilchrist petitioned for reconsideration of the California Governor's warrant in light of a letter dated November 2, 1971, from Olkahoma authorities releasing their detainer, stating "This subject is no longer wanted by this department." The Governor's office refused to reconsider and Gilchrist filed his petition for writ of habeas corpus. The trial court granted the petition and discharged Gilchrist from custody. The People appeal.

FACTS

On November 4, 1968, Gilchrist was convicted in the State of Oklahoma (demanding state) of the crime of joyriding and sentenced to four years imprisonment. On September 21, 1969, he walked away from the

Oklahoma prison work camp. He was later arrested in California on a separate charge, convicted and sentenced to the federal correctional institute at Terminal Island. When he was incarcerated in the federal prison on November 2, 1971, Gilchrist notified the State of Oklahoma of his whereabouts and made a prompt demand for extradition. The response from the demanding state informed petitioner he was no longer wanted. Since that time Gilchrist has been arrested and released three times on the Oklahoma charge. Oklahoma's claim on him has been dismissed in California two times at the municipal court (fugitive complaint) level and now twice at superior court where a Governor's warrant has been lodged. In the instant proceeding the trial court based its dismissal on procedural due process, stating: "The uncontroverted state of the record is that he availed himself of the opportunity to clean his act up and lead a law-abiding life and he's done that for ten years, and it strikes me as an abuse of process to at this late date try and bring him back to Oklahoma, apparently, after he's rehabilitated himself. I see no practical purpose and I can't understand why Oklahoma wants to bring him back."

## I

■ It is Gilchrist's contention that the rules applicable to extradition of an escaped already convicted felon parallel those rights of a yet to be tried detainee to be brought to trial within 180 days pursuant to the Interstate Agreement on Detainers (Pen. Code, §§ 1389-1389.8) are applicable here and require his discharge. The Interstate Agreement on Detainers has no express language nor can we derive by implication a legislative intent to apply these speedy trial statutes to the extradition proceedings of an escaped convicted felon. The Interstate Agreement on Detainers applies where a person has "entered upon a term of imprisonment ... [and] there is pending in any other party state any untried indictment ...." (Art. III.) There is no untried indictment or information awaiting Gilchrist in Oklahoma—only an unserved prison term.

This single argument raised by Gilchrist is one which can be properly raised where a defendant *has not yet been brought to trial in the demanding state.* Gilchrist charges a failure to act promptly and with dispatch, within statutory time limits set by the Interstate Agreement on Detainers or California's speedy trial requirement. (Pen. Code, § 1381.) Neither of these bodies of law authorize Gilchrist's discharge. Gilchrist was convicted of a crime and placed in a state institution from

which he fled. He long ago had a "speedy" trial. He no longer has such a right.

## II

Were it our decision to make, as a matter of justice and equity, we would agree with the trial court. ■ It does not appear from the record there is any good reason for Oklahoma's current warrant and no proper penal purpose is served by incarcerating a law abiding rehabilitated citizen. However, we are not vested with such discretion in extradition proceedings.

The California Supreme Court in *In re Russell* (1974) 12 Cal.3d 229, 234 [115 Cal.Rptr. 511, 524 P.2d 1295], stated concerning the proceedings of extradition: ■ "[E]xtradition is not a matter of mere comity, but an absolute right of the demanding state .... [Fn. omitted; citation.] 'Such is the command of the supreme law of the land, which may not be disregarded by any State.... And, while a State should take care, within the limits of the law, that the rights of its people are protected ..., the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State.' [Citations.]" (See also *In re Golden* (1977) 65 Cal.App.3d 789 [135 Cal.Rptr. 512], cert. den. 434 U.S. 805 [54 L.Ed.2d 63, 98 S.Ct. 35].)

■ Pursuant to Penal Code section 1548.2 the courts have a limited scope of inquiry in habeas corpus proceedings where a Governor's warrant demanding extradition is in issue. Four issues may be considered by the court in determining whether extradition should be granted.

1. Whether a crime has been substantially charged in the demanding state. (Pen. Code, § 1548.2.)

2. Whether the petitioner is the person so charged. (Pen. Code, § 1553.2.)

3. Whether the petitioner was in the demanding state at the time of the offense. (Pen. Code, § 1548.2.)

4. Whether the extradition papers are in order. (Pen. Code, § 1548.2.) (See *In re Kimler* (1951) 37 Cal.2d 568, 571 [233 P.2d 902]; *In re McBride* (1953) 115 Cal.App.2d 538, 541 [254 P.2d 117].)

■ Gilchrist makes no contention that the documents demanding extradition are not authentic, appropriate and properly certified. He has in fact never raised the issues nor does he raise any defenses against the Oklahoma charges or conviction there pending against him. (See *In re Davis* (1945) 68 Cal.App.2d 798, 810 [158 P.2d 36].) Nor does he challenge the constitutionality of the statute under which he is being charged in the demanding jurisdiction (*Sweeney* v. *Woodall* (1952) 344 U.S. 86, 89-90 [97 L.Ed. 114, 117-118, 73 S.Ct. 139]), or the lack of regularity of the proceedings in the demanding jurisdiction (*In re Letcher* (1904) 145 Cal. 563, 564 [79 P. 65]).

*In re McBride, supra*, 115 Cal.App.2d 538, is closely in point. McBride had been sentenced and incarcerated in Texas in 1934. In 1935, after having served seven months, he escaped. In a petition on habeas corpus brought by McBride, he alleged that from 1935 through the mid-1940's the State of Texas knew of his whereabouts but did nothing to cause his return. He spent seven and one-half years in prison and on parole in the State of Washington, and twice the officials of Texas said they would not and could not extradite him. In 1952 McBride was arrested in California on the Texas Governor's warrant demanding his extradition. The issue was whether "Texas has waived jurisdiction over the body of said Wayne H. McBride, in failing to exercise its right to extradite him on occasions long past." (*Id.*, at p. 540.) The court held that no waiver existed notwithstanding the circumstances of the knowledge of Texas and the availability of the defendant. The California court relied upon *People* v. *Dixon* (1944), 387 Ill. 420 [56 N.E.2d 816], where the Illinois Supreme Court held that an unfinished term of imprisonment could only be satisfied by the actual serving of the term's remainder. The only exceptions were a Governor's discharge and a satisfactory parole or a Governor's pardon. The Illinois Supreme Court held the failure of the officials to perform their duties created no right in a defendant to be discharged.

Arguments similar to those made by Gilchrist were considered in the recent case of *People* v. *Superior Court (Lopez)* (1982) 130 Cal.App.3d 776 [182 Cal.Rptr. 132]. Lopez escaped from a Florida prison in 1973. While serving a prison term in California, he made an ineffectual request to Florida to be transferred in order to serve concurrent terms. Upon completion of his California term he was released on parole and arrested in 1980 on a felony fugitive complaint. Lopez filed a petition for writ of habeas corpus. The Court of Appeal held (1) Lopez was a fugitive even though Florida's delay was "too long" and Lopez had at-

tempted to return; (2) Florida did not waive jurisdiction over Lopez by its failure to take custody after Lopez' request; and (3) even if Florida had waived jurisdiction for the unfinished sentence the current extradition proceeding was based on newly filed escape charges.

In this case, discretion rests with the Governor of California (Pen. Code, § 1548.1; *State of South Dakota* v. *Brown* (1978) 20 Cal.3d 765 [144 Cal.Rptr. 758, 576 P.2d 473]) or, in the event of extradition, with the courts of the demanding state. (See *In re Backstron* (1950) 98 Cal. App.2d 500, 502-503 [220 P.2d 742].)

Judgment reversed.

Cologne, Acting P. J., and Reed, J.,* concurred.

Petitioner's application for a hearing by the Supreme Court was denied October 7, 1982.

*Assigned by the Chairperson of the Judicial Council.